## W. HALL HARRIS ET AL., TRUSTEES, *vs.* MARY E. WHITELEY ET AL.

*Husband's Interest in Wife's Real Estate Under Act of 1898, ch. 457—*
*The Statute Not Retroactive.*

Prior to the passage of the Act of 1898, ch. 457, a married woman was empowered to alien or devise her real estate and her surviving husband was entitled to an interest therein only in case she died intestate.   The Act of 1898, ch. 457, provided that "every husband shall acquire by virtue of his marriage an estate for his life in one-third of the lands, held

or owned by his wife at any time during the marriage." Certain judgment creditors of a husband who had married before the passage of the Act of 1898, and whose wife had previously acquired certain real estate claimed that their judgments were liens on the real estate to the extent of the interest of the husband therein. *Held*, that the Act of 1898 has no retroactive operation and that the husband in this case has no such vested interest in his wife's lands as can be levied upon by his creditors and that her property is not subject to the lien of the judgments.

*Held*, further, that it was not within the power of the Legislature to divest or impair the existing rights of married women in their property acquired under the previous law.

Appeal from the Circuit Court of Baltimore City (DOB-BLER, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, PEARCE, SCHMUCKER and JONES, JJ.

*Charles J. Bonaparte*, for the appellants.

The questions involved are substantially *two*, namely:

(1) Did Seth H. Whiteley acquire a statutory curtesy in an undivided one-third of the lands passing to his wife under the will of her grandfather.

(2) If he did, is the right of his creditors to levy on this estate affected by the "ante-nuptial contract," filed as an exhibit with his and his wife's answer.

To answer the *first* question we must determine: (*a*) The *construction* of Art. 45, sec. 7 of the Code of Public General Laws as re-enacted by ch. 457 of the laws of 1898; and (*b*) The *constitutionality* of the same statute.

It was claimed in argument below on the alleged authority of the supposed author of ch. 457 of the laws of 1898, a statute which, in the words of this Court, "works an entire change in the law relating to husband and wife," that its effect was only to create in the husband a "male dower," equivalent to and indeed identical with that granted to the wife by Art 45, sec. 6. To dispose of this suggestion, we need only place—in juxtaposition—the two sections in question.

Art. 45, sec. 6, reads: "A widow shall be entitled to dower in lands held by equitable as well as legal title in the husband

at any time during the coverture, whether held by him at the time of his death or not, but such right of dower shall not operate to the prejudice of any claim for the purchase-money of such lands, or other lien on the same."

Art. 45, sec. 7, reads: "Every husband shall acquire by virtue of his marriage an estate for his life in one-third of the lands held or owned by his wife at any time during the marriage, whether by legal or equitable title, or whether held by her at the time of her death or not, but such estate shall not operate to the prejudice of any claim for the purchase-money of such lands, or other lien on the same; nor shall any conveyance of such lands by the wife alone bar such estate of the husband therein."

The husband acquires "by virtue of his marriage" (*i. e.* as soon as he is married) "an estate for his life" in the lands affected.

The wife "acquires" *nothing* until she becomes "a widow;" even then, until actual assignment, her right of dower is not an "estate" at all, but a mere chose in action. *Harper* v. *Clayton*, 84 Md. 346.

The statutory rights of the husband, under this law, *quoad* the undivided one-third of his wife's lands, are, upon his marriage, precisely those of a tenant by curtesy *initiate* at common law as soon as a living child, capable of inheritance from the wife, is born to them. *Washburn on Real Property*, secs. 47, 48.

Or, in other words, the statute created anew estates by the curtesy in Maryland, limiting them to one-third of the wife's lands and doing away with the necessity for birth of issue, but, in all other respects, leaving them as at common law, and therefore liable, *as soon as created*, to be levied upon by the husband's creditors. *Van Duzer* v. *Van Duzer*, 6 Paige Ch. 366; *Watson* v. *Watson*, 13 Conn. 83; *Lancaster Co. Bank* v. *Stauffer*, 10 Pa. St. 398; *Mattocks* v. *Stearns*, 9 Vt. 324; *Day* v. *Cochran*, 24 Miss. 275; *Washburn on Real Property*, sec. 51.

This construction was not apparently disputed by the learned Judge below, but he held that the statute could apply

only to property acquired or else to marriages contracted *after* January 1st, 1899. It seems probable that he really entertained doubts as to the constitutionality of the Act if it should be construed as affecting property already owned by women already married when it became effective, and we can therefore more satisfactorily consider this suggestion under the second division of our first inquiry.

By the law in force when Mrs. Whiteley was married and when her grandfather died her rights in the property passing under his will were *precisely the same* as they are now, except that she could then and cannot now leave her property by will so as to deprive her husband of all interest in it after her death.

The privilege of making a will is altogether statutory, wholly dependent upon the discretion of the Legislature, and therefore liable to be abridged or destroyed without any just claim for compensation or invasion of any *vested* right. It is enjoyed subject to the power of the State to abrogate it, in whole or in part, at pleasure, and every one accumulates property and marries with the knowledge imputed to him or her that this power may be thus exercised.

The rights of Mrs. Whiteley over her separate property were rather increased than diminished by the Act of 1898, except in this one particular, and that particular is one in which they could never be vested.

The constitutionality of ch. 331 of the laws of 1898, which would be open to the same objection as ch. 457, has been upheld by this Court. *Grabill* v. *Plummer*, 95 Md. 56.

And, although ch. 457 has not been, so far as the appellants know, as yet considered by this Court, it has been sustained by the Baltimore City Court in the case of *Fink* v. *Snyder*, ("Daily Record" for June 23rd and July 11th, 1901); and by the author of a well considered article on the subject in the *Maryland Law Review* for October, 1902.

It would seem very clear that neither Art. 3, sec. 43, of the Constitution, nor ch. 161 of the laws of 1841, codified as Art. 45, sec, 1, of the Code, affects the right of the husband's

creditors. to levy upon. his *interest* as tenant by the curtesy *initiate*, except by postponing its actual exercise until after the death of the wife. *Hall* v. *Hall*, 4 Md. Ch. 283; *Logan* v. *McGill*, 8 Md. 461; *Anderson* v. *Tydings*, 8 Md. 428; *Rice* v. *Hoffman*, 35 Md. 344; *Hoffman* v. *Rice*, 38 Md. 284.

The learned Judge of the Circuit Court says that the Courts "cannot give to sec. 7 of the new Art. 45 a *retrospective* operation." With the utmost respect for his. opinion, it is submitted that. this *dictum* begs the question at issue. Ch. 457. of the laws of 1898 does not profess to undo any act done, or nullify any transaction consummated before it should become operative. It gave husbands. and wives nearly nine months. after its approval in which to remove the wife's property, by suitable·conveyances, from its operation if they desired to do so.. Had. Mr. and Mrs. Whiteley seen fit to execute the deed contemplated by the contract of January 1st, 1881, at any time after April 9th, 1898, when the Act was approved by Governor Lowndes, and before January 1st, 1899, when it took effect, they could and would have avoided its effect. At the date it fixed it became operative (neither "retrospectively" nor, properly speaking, prospectively, but *presently*) upon the persons and things, the rights and interests *then existing*, and, by so doing it changed and perhaps enlarged Mr. Whiteley's marital rights in his wife's property. This, however, deprived *her* of no *vested* right. His creditors could and can do nothing to. her prejudice during her life. *Hall* v. *Hall, supra; Logan* v. *McGill, supra; Rice* v. *Hoffman, supra.*

His revived curtesy cannot, it is true, be barred by her sole deed, but, prior to the Act of 1898, his joinder was necessary. to the validity of *any* conveyance of *any* interest in her sepa-. rate.property; so that, in this respect, sec. 7, as re-enacted, only continued, in part,.a disability previously absolute. Moreover,.. as is very justly remarked by the writer in the *Maryland Law Review*, under this new law,. "she can dispose of the property by appealing to the statutory jurisdiction of equity and proving that the sale is advantageous to all parties."

A careful examination of this·provision of the Act of 1898

Md.]                    Argument of Counsel.

will show that it practically restricted the existing property rights of persons previously married in *two*, and *only* two respects : (*a*) It reduced the freedom of testamentary disposition previously enjoyed by the wife ; this was not a *vested* right.   (*b*) It diminished the opportunities previously enjoyed by the husband to avoid the payment of his just debts ; this was not a *right* at all.

*Wm. Pinkney Whyte* and *Michael A. Mullin* (with whom was *Jos. C. Mullin* on the brief), for the appellees.

Even if the petitioners are correct in their interpretation of the Act of 1898, they have no remedy in this cause.   They are simply general judgment creditors who have not issued execution, either by *fi. fa.* or attachment.   They have neither *jus in re* nor *ad rem.*   Their lien of itself, if they have a lien, gives them no right to present possession.   The relief sought by the plaintiff in the original suit would not have interfered with their legal remedies.   Their petition should be dismissed on this ground, if for no other.   *Taylor* v. *Thompson,* 5 Peters, 358; *Ridgely* v. *Gartrell,* 3 H. & Mc. H. 450; *Manton* v. *Hoyt,* 43 Md. 263; 17 *Ency. of Law & Eq.,* 770; *Hampson* v. *Edelen,* 2 H. & J. 66; *Eschbach* v. *Pitts,* 6 Md. 71; *Dyson* v. *Simmons,* 48 Md. 215; 19 *Ency. of Law & Eq.,* 6, 12; *Conrad* v. *Atlantic Ins. Co.,* 1 Peters, 443, 444.

Their petition could not be retained for discovery simply. *Reddington* v. *Lanahan,* 59 Md. 439; *Chase* v. *Taylor,* 4 H. & G. 53; *Miller Eq. Proc.,* secs. 738, 739; nor for relief, not having issued execution.   2 *Story Eq. Jur.* (13th ed.), sec. 1216 (*b*); *Smith* v. *Hurst,* 10 Hare, 48, 49.

In *Mountford* v. *Taylor,* 6 Vesey, 788, the right of a creditor to discovery of freehold subject to execution was sustained, but that was after the writ of *Elegit* was sued out; and in *Hoffman* v. *Rice,* 35 Md., where the realty had been converted into personalty, the creditors had made their general liens as specific as they could at law by issuing attachments.

If the petitioners are right in their construction of the Act of 1898, the husband has during the wife's life time an estate

similar to the tenancy by curtesy at common law. In such case, his judgment creditors have a lien on his interest, yet the law suspends the right of execution during the life of the wife, leaving the lien perfect on the life estate of the husband, *to be enforced on the death of the wife.* *Anderson* v. *Tydings*, 8 Md. 427; *Logan* v. *McGill*, 8 Md. 461.

A tenancy by the curtesy was in *all* the the wife's lands, and at common law there was no difficulty in ascertaining what, and how much, was subject to execution, and therefore, to the lien of judgments against the husband. But sec. 7 of the Act of 1898, gives the husband only "*an* estate for his life *in one-third of the lands* held or owned by his wife at any time during the marriage." It gives him "an estate for life in one-third of the lands," *not an undivided one-third interest in all the lands.* Two-thirds of the lands (not merely an undivided two-thirds interest in the lands) are entirely free from his claim. *Quære:* In which third of his wife's lands has he an estate for his life? Until this is assigned and set off, no particular third could be scheduled or sold for payment of his debts. And as "a judgment is a lien on lands, because—and for no other reason—the lands are liable to be sold in satisfaction of the judgment" (*Eschbach* v. *Pitts*, 6 Md. 71), there is, in fact, no lien until the assignment is made. The petitioners are in the same position as a wife's creditors, who, before assignment of dower, have no lien, no vested interest, no remedy either at law or in equity. Their claim is against a mere chose in action. *Harper* v. *Clayton*, 84 Md. 346.

Not only are chapters 331 and 457 of the Acts of 1898 to be construed together, but the whole is an intelligent and consistent scheme, by giving here and taking there, to equalize the rights and interests of married persons, and on the whole to elevate the wife, give her control of her own property and make of her an independent being, free from the control formerly exercised by her husband. But for this intended reform, by which so much was taken from the husband's authority, as well as his pocket, a compromise was offered by leveling up the husband's own rights where by the former law they were inferior to the wife's.

Md.]                    Argument of Counsel.

The scheme is perfect as a whole. It is impossible to segregate and nulify any important feature of it without destroying the symmetry and justice of the entire conception.

The construction contended for by the petitioners would destroy this symmetry and harmony. As to the real estate the equality of right would cease. The wife would receive a life estate in one-third, but only after the husband's death. The husband, however, would receive a life estate in one-third not only after the wife's death, but during her life time as well.

And as by the settled law the wife's creditors could not sell *her* interest till her dower is assigned after the husband's death, we would have another element of inequality, in giving to the husband a present estate which he could claim and which would be subject to the judgment lien of his creditors during his life time, and practically take from the wife, for the benefit of such creditors, the disposal of a portion of her estate whether the husband thought proper to exercise his marital rights or not.

Can it be supposed that the Legislature intended to do by indirection what it could not constitutionally do directly, *i. e.,* subject the wife's property to the debts of the husband?

Sec. 7 itself refutes the petitioners' construction. The use of the term *bar* in the last sentence is consistent only when used as to a claim for an estate to begin after the wife's death. How could she have conveyed away his right so as to have required such a saving clause, if an *estate* had been carved out of her property during her life and been outstanding at the time of her conveyance, and which estate she could not, of course, have conveyed? The intent of the Legislature is to be sought in the entire Act, and the interpretation given it by the Court should be consistent with all parts of it. Reading the seventh section as a continuation of the sixth section, is it not apparent that the intention was to legislate as to the right of each party in the event of the other's death?

The construction of the petitioners is inconsistent with sec. 4 of the same Act, which states that married women shall hold their property "for their separate use as fully as if they

were unmarried." How can a woman hold for "her separate use as if she were unmarried," if her husband be entitled to one-third the income, whether she willed it or not?

Her separate use, however, would not be inconsistent with our construction, for the "separate use" would be for her life only, and the husband's interest would vest on her death. *Woodburn* v. *Cooney*, 33 Md. 320.

In construing an Act of the General Assembly, it is not to be presumed that the Legislature intended to violate constitutional rights. An interpretation will be given to the Act, if possible, which is in accordance with constitutional guarantees, the general trend of legislation and fundamental principles of justice. *Tennison* v. *Clark*, 33 Md. 85; *Clark* v. *Wootten*, 63 Md. 113; *McCubbin* v. *Stanford*, 85 Md. 378; *Hall* v. *Hall*, 4 Md. Ch. Dec. 287, 288.

But if the Court should agree with the petitioners' counsel as to the construction of sec. 7 in its general application, the section cannot be applied to this particular case. *First.* Because it would divest Mrs. Whiteley's vested right in her property and deprive her of the same without compensation. *Const. of Md.*, Art. 3, sec. 40; *Const. of U. S.*, 14th Amendment.

As between married persons, the general trend of legislation has been in the direction of enlarging the power of the wife over her own estate, and the application of the doctrine of vested rights has usually been to the protection of the tenancy by curtesy, for the benefit of the husband, and, through him, of his creditors. Accordingly, if the estate had already become vested, it would be protected in him against legislative transfer to the wife. The wife's dower, until assigned, is not so protected, because it is an inchoate interest only, not a *vested* estate. *Cooley*, 440, 441; *Wyatt* v. *Smith*, 25 W. Va. 813; *Herzinger* v. *Florence*, 39 Ohio St. 516, 529; *Clark's Appeal*, 79 Pa. St. 376; *Anderson* v. *Tydings*, 8 Md. 427; *Logan* v. *McGill*, 8 Md. 461; *Rice* v. *Hoffman*, 35 Md. 344; *Hoffman* v. *Rice*, 38 Md. 284; *Porter* v. *Bowers*, 55 Md. 213. Prior to January 1st, 1899, the husband had only an *expec-*

*tant* interest for life in the whole of his wife's estate. There is no constitutional restriction to prevent a reduction of this to one-third. But as it is settled law that the Legislature could not transfer to the wife the husband's vested curtesy, *a fortiori*, the *wife's* vested estate in her own property cannot be transferred to the husband during a marriage existent at the date of the passage of the Act of Assembly.

*Second.* It would make her property subject to the debts of her husband. *Const. of Md.*, Art. 3, sec. 43.

*Third.* It would impair the obligation of a contract otherwise valid and obligatory. *Const. of U. S.*, Art. 1, sec. 10.

SCHMUCKER, J., delivered the opinion of the Court.

This appeal raises the question whether the appellee, Seth H. Whiteley, has by virtue of his marriage such an interest in his wife's real estate as is liable to be levied upon by his judgment creditors. There is no dispute as to the material facts of the case which are as follows:

The appellees, who are husband and wife, were married in 1881. Mrs. Whiteley in 1866, while yet unmarried, acquired under the will of her grandfather, John Brooks, a vested remainder in certain real estate subject to a life interest therein given by the will to her now deceased mother, Rachel H. Matthews. The life estate of Mrs. Matthews was not devised directly to her but was given to her brother, Isaac Brooks, in trust for her benefit. In a partition of the estate the portion of the real and personal estate applicable to the devise for the benefit of Mrs. Matthews for life with remainder to her daughter, Mrs. Whiteley, was set apart and delivered into the possession of Isaac Brooks, the trustee, who managed it until the death of the equitable life tenant, which occurred in March, 1903.

Shortly after Mrs. Matthews death the appellees filed an amicable bill in the Circuit Court of Baltimore City against Isaac Brooks, the trustee, reciting the nature and history of the trust and alleging that upon the death of Mrs. Matthews, the equitable life tenant, the appellee, Mary E. Whiteley, had

demanded of the trustee the absolute delivery to her of all of the property which he had held in trust during the life of her mother and that the trustee, although not denying her right to the property absolutely, declined to transfer and deliver it to her without the direction of some Court of competent jurisdiction. The bill then prayed that the defendant be directed to make a full report of the property which he had held as trustee and to transfer it absolutely to Mrs. Whiteley.

The defendant answered the bill admitting its allegations and consenting to the granting of the relief prayed for, and he accompanied his answer with a schedule of the real and personal estate which had come to his hands or under his control as trustee. The case was by an order of Court referred to the Auditor and Master for a report and opinion thereon.

At that stage of the case the appellants, who held judgments for large amounts against the appellee, Seth H. Whiteley, intervened in the proceedings by a petition setting up the claim that Whiteley under and by virtue of sec. 7 of Art. 45 of the Code as amended by ch. 457 of the Acts of 1898 had a vested estate for life in one-third of all of the lands held or owned by his wife, the appellee, Mary E. Whiteley, including the real estate mentioned in these proceedings which she had acquired by devise in 1866, and that their judgments had become liens on said real estate to the extent of the interest of her said husband therein. The petition further alleged on information and belief that some portion of the personal property in the hands of Isaac Brooks, the trustee, consisted of the proceeds of real estate left to Mrs. Whiteley by the will of her grandfather and the petitioners claimed that they were also entitled to an equitable lien under their judgments on such personal property. The petitioners prayed to be made parties to the case and to have their alleged lien recognized and protected in any disposition that might be made under the Court's direction of the real estate and also of such portion of the personalty in the hands of the trustee as represented the proceeds of converted realty.

The appellees, Whiteley and wife, answered this petition

denying the rights of the petitioners, and the trustees de-murred to it.   The issue upon the petition having come to a hearing the Circuit Court dismissed the petition with costs by the order from which the present appeal was taken.   The appellees also set up in their answer and relied upon an ante-nuptial contract between Mr. and Mrs. Whiteley to execute a deed of trust of her real estate to a trustee for her sole and separate use, but we deem it unnecessary, in the view of the case which we take, to further advert to that instrument.

The fundamental question presented by the record is whether sec. 7 of the Act of 1898 operated to change the expectant interest in his wife's real estate which Seth H. Whiteley took by virtue of his marriage to her in 1881, under the laws then in force, into a present vested estate for his life which is liable to be levied on by his creditors.   That Act as a whole repealed and re-enacted the entire Art. 45 of the Code relating to husband and wife and made radical changes in the property interests respectively acquired by each of them in the other's estate by virtue of entering into the marital relation.   Sec. 7 of the Act which defines the interest in his wife's real estate which the husband takes by virtue of the marriage is the one upon which the appellants in their petition rely.   That section is as follows :

Sec. 7.  "Every husband shall acquire by virtue of his marriage an estate for his life in one-third of the lands held or owned by his wife at any time during the marriage, whether by legal or equitable title, or whether held by her at the time of her death or not, but such estate shall not operate to the prejudice of any claim for the purchase-money of such lands, or other lien on the same ; nor shall any conveyance of such lands by the wife alone bar such estate of the husband therein."

The language used in this section would not, under the prevailing rules of construction, be held to manifest an intention on the part of the Legislature to give its provisions such retroactive operation as to disturb or impair existing property rights.

In *Williams* v. *Johnson*, 30 Md. 507, the Court say: "It is a sound rule of construction founded in the wisdom of the common law that whenever a statute is susceptible, without doing violence to its express terms of being understood either prospectively or retrospectively Courts of Justice invariably adopt the former construction. A statute ought not to have a retroactive operation unless its words are so clear, strong and imperative that no other meaning can be annexed to them, or unless the intention of the Legislature could not be otherwise satisfied; and especially ought this rule to be adhered to where such a construction would alter the pre-existing situation of the parties or would affect or interfere with their antecedent rights." The only reason urged by the appellants for ascribing to the Legislature an intention to give retroactive force to the Act now under consideration is that by its own terms it was not to go into operation until January 1st, 1899, about nine months after the date of its passage. This delay in making the law operative they contend was intended to afford to husbands and wives who did not wish their property rights to be affected by it an opportunity to remove the wife's real estate from its operation by suitable conveyances. That circumstance does not seem to us to afford sufficient ground for ascribing to the Legislature an intention to disturb the property rights of husbands and wives already existing at the passage of the Act.

Even if the Legislature intended, when making radical changes in some of the incidents of the marital relation by the Act of 1898, to affect the property rights of persons already married it was beyond their power to divest or impair in that manner any vested rights of property acquired under previously existing laws. *Remington* v. *Metro. Savings Bank*, 76 Md. 548; *Rock Hill College* v. *Jones, Admr.*, 47 Md. 17–18; *Bramble* v. *Twilley*, 41 Md. 442; *Wilderman* v. *Mayor*, 8 Md. 556.

Assuming that the interest acquired by Mr. Whiteley in his wife's real estate at the time of his marriage in 1881, which under the Code of 1860 was a mere expectancy and not a

vested estate, was subject so far *as he was concerned* to legislative control and might have been modified or diminished by subsequent legislation, it does not at all follow that the Legislature had the power to increase or enlarge that interest if by so doing the wife's vested interest in her own estate would be correspondingly diminished. Mrs. Whiteley acquired her estate in her property by devise and not as an incident of her marital *status* or relation and she is entitled to the full benefit and protection of the proposition so strongly supported by the cases last cited. This Court has already held that even the husband's estate by the curtesy in his wife's realty, when it had become fixed by the birth of a child alive, was not impaired or affected by subsequent legislation regulating marital property rights although his curtesy was founded on and grew out of his marital relation. *Porter* v. *Bowers*, 55 Md. 215; *Rice* v. *Hoffmon*, 35 Md. 344; *Hoffman* v. *Rice*, 38 Md. 28:. The principle there asserted supplies with equal force to the estate of the wife in her realty which had become vested prior to the Act of 1898.

It is undoubtedly true that prior to January 1st, 1899, the date at which the Act of 1898 went into effect, Mrs. Whiteley held her real estate by a fixed and vested title subject merely to the expectant or inchoate life interest therein, conferred on her husband by the Code of 1860, which would have become consummate only in case she died intestate and he survived her. That interest of her husband was not a vested one nor was it liable to be levied on by his judgment creditors. Now if the Act of 1898 operates upon her case in the manner contended for by the appellants it enlarges the inchoate interest in her real estate to which her husband became entitled by virtue of his marriage to her in 1881 to a present and vested life estate in an undivided one-third of all of her holdings. Such an interest in her real estate, if he possesses it, is liable to be levied on by his judgment creditors and all of her realty would therefore be subject to a lien in their favor to the extent of his interest. She could not emancipate her property from that lien or alienate any of it by any of the methods by

which she is authorized to dispose of her estate without satis-fying the holders of the lien or procuring their consent or concurrence, although they are complete strangers to her and she is under no financial obligation to them. It cannot in our judgment be said that an operation of the Act producing such results would not interfere with or impair the vested rights of property acquired by Mrs. Whiteley in her real estate prior to the date of its passage.

In *Rock Hill College* v. *Jones, supra,* our predecessors said: "Rights that pass and become vested under the existing law of the land are supposed to be beyond the control of the State through its Legislature. The mere change of the law does not divest or impair the rights of property acquired before the change, even though the Legislature may intend the new law so to operate. A law says Puffendorff can be repealed by the law giver, but the rights which have been acquired under it while it was in force do not thereby cease. It would be an act of absolute injustice to abolish with a law all of the effects which it had produced." * * "This principle is of the utmost importance and no Court in the country has been more emphatic than this in giving sanction to it and denying validity to legislation which sought by retroactive operation to divest rights of property which had become vested before such legislation occurred."

Being of the opinion that it was beyond the power of the Legislature by the mere passage of the Act now under con-sideration to transfer to and vest in Mr. Whiteley or any other person an estate, however small, in Mrs. Whiteley's real prop-erty without her consent and without any consideration other than an already existing marriage, we must hold that Mr. Whiteley has no estate in that property upon which the ap-pellants acquired a lien under their judgments. The order appealed from must therefore be affirmed.

As we are not now dealing with a husband's interest in real estate acquired by his wife after January 1st, 1899, nothing which we have said has any relation to such an estate.

*Order affirmed with costs.*

(Decided January 15th, 1904.)