# FRANK SLINGLUFF et al. *vs.* JOHN HUBNER, Trustee.

*Appeal From Orders on Auditor's Accounts—Dower in Equitable Estate of Husband Acquired Prior to Act of 1898—Res Adjudicata.*

An order declaring the principles upon which an auditor should state an account is not a final order, but is brought up for review on appeal from a subsequent order ratifying an audit stated in accordance with the prinples so declared.

Prior to the Act of 1898, ch. 457, a wife was entitled to dower in an equitable estate owned by her husband only in case he died seized of such estate. The said Act of 1898 provides that the wife shall be entitled to dower in the equitable estates of her husband to the same extent as in his legal estates. *Held*, that where the parties were married and an equitable estate was acquired by the husband prior to the passage of the Act of 1898, the right of the wife to dower in such estate is not affected by the Act but her rights are to be determined by the pre-existing law.

When an order is passed ratifying an account by which certain commissions were allowed to a trustee, and no appeal is taken therefrom, and subsequently another account is stated allowing the same commissions, then upon appeal from an order ratifying the last account, the propriety of allowing the commissions is not open to review but that question is *res adjudicata*.

Appeal from the Circuit Court of Baltimore City (Wickes, J.)

The cause was argued before McSherry, C. J., Fowler, Page, Boyd, Pearce, Schmucker and Jones, JJ.

*T. Rowland Slingluff* and *German H. H. Emory*, for the appellants.

*Frank Gosnell* (with whom was *Henry H. Hubner*, for the appellee.

Jones, J., delivered the opinion of the Court.

This case arose as follows: Mrs. Frances E. Slingluff died in 1890 leaving a will by which she gave and devised to her two

sons, Fielder C. and Frank Slingluff, and her son-in-law, Joseph Hunter, certain real estate therein described to hold the same in trust—"To sell, lease, mortgage, manage and develop the same as in their judgment may seem best to the interests of my estate and for this purpose I give them full and absolute power to execute any and all conveyances that may be necessary for such purposes, to sign all petitions for opening roads or streets, or to make any improvements whatsoever and generally to manage said property for the purposes aforesaid, in the same manner as I could do, if living, and I hereby release any and all persons who may deal with them for the above purposes, from all responsibility for the proper application of any moneys received by them and in case of any sales or other disposition of said lands, or any portions thereof, I direct my said trustees to divide the proceeds of same into seven equal portions, and to pay the same to my said children, or the descendants thereof, and the trustees for such shares as I have named trustees, as is provided in this my will." The son-in-law, Joseph Hunter, renounced the trust. The two sons accepted the same and having petitioned the Circuit Court to take jurisdiction thereof proceeded with the execution of the trust under the direction of that Court. The testatrix left seven children including the two sons named as trustees.

In 1900 both of the trustees, who accepted the trust, applied for the benefit of the United States Bankrupt Act. Frank Slingluff on the 20th day of June and Fielder C. on the 10th of August. The former was adjudicated a bankrupt on the 2nd of July and received his discharge on the 31st of August next following his application. The latter was adjudicated a bankrupt on the 15th of August and obtained his discharge on the 8th of December next following his application. John Hubner was named as assignee in bankruptcy in each case; and by an order of Court passed in the proceedings in the trust estate, on his application, on the 28th of December, 1900, he was made a party, in that capacity, to these proceedings.

On the 29th of March, 1901, an auditor's account was filed

therein which made to the trustees an allowance of commis-
sions to the amount of $8,539.45 on sales and collections
shown thereby.  To this account Hubner assignee filed excep-
tions and asked that it be rejected, assigning among others, as
reasons therefor that the commissions allowed the trustees were
unusual and excessive; and that commissions had been allowed
on "improper amounts"—some of which were specified.  On
the 3rd day of October, 1902, this account of the auditor was
finally ratified and confirmed and the order directed "that the
trustees apply the proceeds accordingly with a due proportion
of interest as the same has been or may be received."  On the
twenty-fifth day of January, 1904, there was stated another
auditor's account in which allowances were made in lieu of
potential right of dower to the wives of Fielder C. and Frank
Slingluff out of their distributive shares, &c., shown by the
account; and an allowance of commissions to the amount of
$2,142.16 on sales and collections reported.  With the ac-
count was a "statement of advances made to the different leg-
atees of the testatrix, by the trustees" which showed some
overpaid and the amounts due to others who had not received
their full shares of what was reported for distribution.  In this
statement Frank Slingluff was credited with $13,208.59 his
distributive share as shown in the previous account ratified on
the 3rd of October, 1902, and with $4,269.72, one-half of the
commissions allowed by that account making $17,478.31, and
was charged payments made to him $10,438.30, and the one-
half commissions paid to  him, $4,269.72, making $14,708.02,
and leaving a balance of $2,770.29, audited as payable to  his
assignee in bankruptcy.

The assignee in bankruptcy, Mr. Hubner, filed exceptions
to this account alleging as the grounds thereof the allowances
to the wives of the two trustees in lieu of potential right of
dower; and "Because the auditor has allowed the trustees
herein the sums of $10,438.30 and $4,601.90 as paid Frank
Slingluff on account before his bankruptcy, whereas the testi-
mony taken before the auditor and the books of the trustees
show that only $10,438.30 was paid to him; and the balance,

towit, $4,601.90, should therefore have been audited and allowed to John Hubner, trustee in bankruptcy of Frank Slingluff."

On the 7th of April, 1904, the Court passed an order which recited "The various exceptions to the auditor's account filed in the above-entitled cause having come on to be heard, the same were argued by counsel, and by the Court duly considered, it is therefore this 7th day of April, 1904, adjudged and ordered as follows. "First, that the wives to whom allowances in lieu of dower had been made were not entitled to the same; that as to commissions allowed to Frank Slingluff "in so far as they relate to sales and collections made" by the trustees, "prior to the filing of the petition in bankruptcy against the said Frank Slingluff, and as to which orders of this Court were passed allowing said commissions prior to said petition in bankruptcy, be, * * * sustained and the amount thereof is therefore ordered to be audited to the trustee in bankruptcy of said Frank Slingluff—in so far as they relate to commissions upon sales and collections made by said * * trustees prior to said petition in bankruptcy, and as to which no order of this Court was passod allowing the same prior to said petition in bankruptcy, be * * overruled." Then after ruling upon matters which appear to have been presented by exceptions filed by other parties in interest and reserving a question as to these "for the further consideration" of the Court the order concludes "and the auditor in restating his account in these proceedings shall do so in conformity with the terms of this order."

On the 14th of June, 1904, the auditor filed his account stated in conformity with the foregoing order. To this account Frank Slingluff filed exceptions because it allowed to his assignee in bankruptcy commissions that had been theretofore "audited and distributed" to him in the account of the 29th of March, 1901, and because it did not allow the amounts in lieu of potential right of dower which had been allowed in the previous account which was set aside. Testimony was taken under these exceptions and it was in proof that Frank

Slingluff had never, prior to filing his petition in bankruptcy, drawn any of the sum allowed for commissions in the account of the 29th of March, 1901, but that since the ratification of that account and before the 7th of April, 1904, he had drawn all of his one-half of the commissions.

On the 13th day of March, 1905, these last-mentioned exceptions were overruled "the Court being of opinion that the same" had "been disposed of by the order of the Court passed  *  *  on the 7th day of April, 1904," and the "auditor's report and account" was "finally ratified and confirmed." From this order the appeal which brings the case to this Court was taken by Frank Slingluff and Belle C. Slingluff, his wife, and Mary J. Slingluff, the wife of Fielder C. Exceptions were filed to the testimony of Frank Slingluff and without discussing these the testimony will, in considering the questions presented here, be laid out of the case.

The first question arises on the motion to dismiss the appeal. The ground of this is that the order of the 7th of April, 1904, is a final order and concludes the appellants upon the questions sought to be raised here and not having been appealed from within the time prescribed for taking appeals the appellants cannot be heard to question it now. As said by JUDGE BUCHANAN in *Thompson* v. *McKim*, 6 Har. & John. 302, there is "much difficulty in drawing a precise line" between orders that are final in character and those that must be considered as only interlocutory; and "every case must in some measure depend upon its peculiar circumstances." We do not think the order now in question is to be regarded here as a final order. It is not such an order as in the language of JUDGE BUCHANAN in the case just cited draws "after it the coercive process of the Court of Chancery." No party in interest, by reason and force of that order, could get his or her money as distributed in the rejected audit without some further action by the Court; and could have no process to compel an execution of the order without first obtaining some further action to fix definitely and finally the rights to be enforced. In respect to the right of Frank Slingluff to com-

missions it does nothing more than declare the principle upon which they are to be allowed; or which is to guide the auditor in fixing what will be due to him and what to his assignee in bankruptcy. It evidently contemplated further action as to matters embraced in the audit because as to some of them a question was reserved for future consideration. While the order was not final it was an appealable order as being directly within the terms of sec. 27, Art. 5, Code 1904, as "an order determining a question of right between the parties, and directing an account to be stated on the principle of such determination." The order now under consideration was therefore under sec. 28 of Art. 5, Code 1904, brought up for review by the appeal from the final order of March 13th, 1905, which was passed upon the audit carrying out and giving effect to the principle of determination which the former order had declared.

The audit which was rejected by the order of the 7th of April, 1904, was the first to make the allowances of the amounts in lieu of potential right of dower which have been heretofore mentioned as the subject of exception to the last audit; and in the view just expressed as to the effect of the appeal here in bringing up the order that rejected that audit for review the question as to the propriety of the allowances referred to is before us. This question is settled by the decision of this Court in the case of *Harris* v. *Whitely*, 98 Md. 430. The estates of the husbands as to which the allowances in question were made were equitable estates. *Devries* v. *Hiss*, 72 Md. 560. Prior to the Act of 1898, chap. 457, Code 1904, Art. 45, sec. 6, it was the settled law that a wife was not entitled to dower in the equitable estate of her husband unless the husband died possessed of such estate. *Glenn* v. *Clark*, 53 Md. 580.

By the Act of 1898 the wife has provided for her dower in the equitable estate of the husband to the same extent and with the same effect as it existed, prior thereto, in his legal estate. If here there can be an allowance of dower as is claimed it must be by reason of the effect of the Act 1898.

In *Harris* v. *Whitely*, 98 Md. *supra*, this Court applied to that Act the rule of construction "that whenever a statute is susceptible without doing violence to its express terms of being understood either prospectively or retrospectively Courts of Justice invariably adopt the former construction." This was laid down in *Williams* v. *Johnson*, 30 Md. 500—507—8 where it was further said "a statute ought not to have a retroactive operation, unless its words are so clear, strong and imperative, that no other meaning can be annexed to them, or unless the intention of the Legislature could not be otherwise satisfied ; and especially ought this rule to be adhered to, when such a construction would alter the pre-existing situation of parties, or would affect or interfere with their antecedent rights."

In the case at bar the marriages of the parties had taken place and the property, sought to be affected by dower rights in the wives, had been acquired and become vested in the husbands prior to the Act of 1898. To construe that Act to fasten upon the equitable estates of the husbands dower rights in the wives to the same extent and with the same effect as if the same were legal estates "would alter the pre-existing situation of the parties" and "would affect or interfere with their antecedent rights." It would deprive the husband of the right to alien the property or to deal with it except always subject to the dower right of the wife—would put upon it an encumbrance and clog his right to use it according to his vested right as he had theretofore enjoyed it. The Court, in the case of *Harris* v. *Whitely*, *supra*, denied this operation and effect to the statute in question as to the expectant estate of the husband in the property of the wife and held that where the marriage had taken place and the property had been acquired prior to the Act such expectant estate was not enlarged or changed thereby; and said "even if the Legislature intended, when making radical changes in some of the incidents of the marital relation by the Act of 1898, to affect the property rights of persons already married it was beyond their power to divest or impair in that manner any vested rights of property acquired under previously existing laws." And see cases there

cited. We must hold here, as the Court did in the case just referred to that the rights of the parties are not affected by the Act of 1898; and must be determined according to pre-existing law, from which it results that the action of the Court below in rejecting the allowances in lieu of potential right of dower as made in the audit of the 25th of January, 1904, must be affirmed.

The remaining question is as to the right of Frank Slingluff to the commissions allowed to him and his co-trustee in the audit of the 29th of March, 1901. This question we must hold was concluded by the final ratification of that audit on the 3rd day of October, 1902. Here again we have a recent decision of this Court which seems clearly to settle the con-troversy upon this point—the case of *Marine Bank* v. *Heller*, 94 Md. 213. In that case The Chesapeake Guano Company, a corporation, having become insolvent receivers were ap-pointed to take charge of its affairs. The assets consisted at the time of certain real estate having on it valuable buildings and machinery, stock in trade and book accounts. The buildings were destroyed by fire after the appointment of re-ceivers who made collections of the insurance money and book accounts and then had an account stated distributing the funds so realized. Among the allowances in the account thus stated was an item for taxes, upon the real estate and improve-ments, which had accumulated thereon. Exceptions to the account of the auditor were filed by parties in interest; but none of the exceptions was to the allowance of these taxes. Some of the exceptions were withdrawn and others overruled and the account was finally ratified. Subsequently the real estate was sold and an account was stated distributing the pro-ceeds of sale thereof. Exceptions were then filed by parties in interest to the ratification thereof upon the ground that the taxes which had been allowed in the previous account should have been deducted from the proceeds of the real estate and distributed among the general creditors of the insolvent cor-poration. These exceptions were sustained below, but this action was reversed by this Court where the case, as it ap-

pears, was argued upon various grounds but the Court, through JUDGE PEARCE, said that the primary question was as to the conclusiveness of the ratification of the preceding account in which the taxes had been allowed; and applied in its strictness the rule there quoted from *Henderson* v. *Henderson*, 3 Hare, 115, to the effect "that where a given matter becomes the subject of litigation, in and of adjudication by a Court of competent jurisdiction, this Court requires the parties to bring forward their whole case, and will not, except under special circumstances, permit the same parties to open the same subject of litigation in respect of a matter which might have been brought forward only because they have from negligence, inadvertence, or even accident omitted a part of their case. The plea of *res adjudicata* applies, except in special cases not only to the points upon which the Court was required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, even using reasonable diligence, might have brought forward at the time." The principle was illustrated by reference to other cases in our own Court, among them the recent case of *Rogers, Brown & Co.* v. *Cit. Nat. Bank et al.*, 93 Md. 613. A recurrence to the facts of the case at bar in the present connection will be sufficient to manifest its parallelism with that of *Marine Bank* v. *Heller*, *supra*, and how directly it falls within the principle which controlled the decision of that case. There all parties to be affected were before the Court; the proceedings were *in fieri* and the fund to be dealt with was in Court; but the Court ignored every consideration that was pressed for disturbing an audit, once finally ratified, upon the ground of its being *res adjudicata* as to all questions that could have been presented for adjudication prior to its ratification. The conditions that have been referred to as existing in the case of *Marine Bank* v. *Heller*, *supra*, exist here.

Exceptions were filed to the audit in this case of the 29th of March, 1901. The commissions which are here in dispute were made the subject of specific reference in the exceptions

filed and if the Court was not required by the parties litigating the matter of the audit "to form an opinion and pronounce judgment" on the question which is brought up in the present litigation such question could then have been adjudicated and is therefore to be regarded as *res adjudicata.*    The audit was finally ratified and the trustees were authorized and directed to pay out the funds in accordance therewith. It then became their right and duty to so dispose of the funds.    *Thurston* v. *Devecmon,* 30 Md. 210, and they had the right to regard all questions of the right and propriety of so doing as concluded. For the reasons stated that part of the order of the Court below of the 7th of April, 1904, which gave directions to the auditor in respect to the allowance of commissions to Frank Slingluff and the order of the 13th of March, 1905, ratifying the audit stated in conformity to such directions must be reversed.

> *Orders reversed in part and affirmed in part with costs to the appellants and cause remanded to be proceeded with in accordance with the foregoing views.*

(Decided June 22nd, 1905.)