# LOUIS A. MASTERMAN

*vs.*

# AGNES F. MASTERMAN.

*Tenancy by the entireties: not abolished by Code, Article 45,
sections 1 and 2.   Insurance on property: joint interest;
rights of husband and wife thereunder;
receiver therefor.*

Sections 1 and 2 of Article 45 of the Code, authorizing a
married woman to acquire and hold property, as there provided,
to her sole and separate use, does not affect the nature of the
estate conveyed to a husband and wife by deed to them jointly.
p. 170

A deed to a husband and wife jointly constitutes them ten-
ants by the entireties, and the survivor takes the whole.   p. 170

But while the estate by entireties continues as at common
law, the husband has not the same rights to the rents and
profits; such rights were not the incidents of the estate, but
were in virtue of a husband's rights at common law.      p. 174

A husband and wife, under a deed for a leasehold estate in a
house and lot, were tenants of the same by the entireties; the
husband had left the wife; while the wife was residing there
the house was injured by fire so that she was compelled to
change her residence; the house was insured (presumably for
the benefit of both tenants by the entireties) ; the house could be

repaired and saved by the insurance money if it were promptly so applied and closed against the weather; the wife filed a bill alleging such facts, together with the refusal to so apply his share of the insurance, alleging the damage and total loss to the house if repairs were not promptly made, and praying for the appointment of a receiver so as to apply the insurance money, and make the repairs: *Held,* that the bill stated facts which, if sustained by proof, justified a court of equity in assuming jurisdiction and requiring the defendant to answer, and if need be to appoint a receiver as prayed.                    p. 178

*Decided June 23rd, 1916.*

Appeal from the Circuit Court of Baltimore City. (DOBLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*John M. Requardt,* for the appellant.

*Richard H. Stevenson,* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from an order overruling a demurrer to an amended bill of complaint filed by the appellee against the appellant. The bill alleges that the plaintiff married the defendant on September 5th, 1894, and resided with him until the 17th of March, 1915, at which time he abandoned and deserted her and they are now living apart, occupying and maintaining separate domiciles; that up to the time of the separation they occupied a dwelling house in Govans,

Baltimore County, which on the 1st of April, 1915, was damaged by fire which rendered it untenantable, and since then the plaintiff, being unable to occupy the house, has resided in Baltimore City; that the house was a commodious, comfortable and spacious frame cottage, with modern and sanitary improvements, well situated in and upon a spacious and well kept plot of ground; "that said premises, which had a valuation of at least four thousand dollars ($4,000.00) is leasehold property, subject to an annual ground rent of fifty dollars ($50.00), and is owned by the defendant, Louis A. Masterman, and your oratrix as tenants by the entireties."

It is further alleged that the house can be restored to its former state of repair and habitation for a sum not exceeding the amount of insurance, namely, $2,500.00, provided the repairs are made promptly and with reasonable dispatch and the house is no longer exposed to the weather and elements; that the $2,500.00 paid by the insurance company was paid by a check drawn to their joint order and is now on deposit in a bank in Baltimore City; that unless some steps are taken promptly and immediately to rehabilitate said premises and house, the same will waste, decay and become a total loss, beyond repair and restoration; that although the plaintiff has invited the defendant to restore the damaged premises and house, reconcile their respective differences and again live together in said house as husband and wife, he has refused to do so, and still declines and refuses to repair and restore said house with said insurance money, or to use his portion or share thereof towards that end, and refuses to live with her.

The bill then prays that, "a receiver be appointed to take charge of said property and said sum of $2,500.00, now on deposit at the Savings Bank of Baltimore, so that proper and necessary repairs may be made to restore the same to its former state and condition, or in so far as said sum will repair or restore said house," and for general relief.

The deed is not in the record and its date is not given. It was executed sometime after September 5, 1894, the time of the marriage of the parties, but whether before or after the Act of 1898, Ch. 457, took effect we are not informed.. In *Marburg* v. *Cole,* 49 Md. 402, it is said: "By the common law of England, which is the law of this State, except where it has been changed or modified by statute, a conveyance to husband and wife does not constitute them joint tenants, nor are they tenants in common. They are, in contemplation of the common law, but one person, and hence they take not by moieties but the entirety. They are each seized of the entirety, and the survivor takes the whole." It was there also decided that the Act of 1822, Chapter 162, now codified as Section 13 of Article 50 of the Code (which provides that no deed, devise or other instrument of writing shall be construed to create an estate of joint tenancy, unless so expressly provided) does not affect or apply to such an estate as that conveyed to husband and wife, and that the provisions of Sections 1 and 2 of Article 45 of the Code of 1860, authorizing a married woman to acquire and hold property as therein provided to her separate use, did not at all affect the nature of the estate conveyed to husband and wife by deed to them jointly.

In *McCubbin* v. *Stanford,* 85 Md. 378, Thomas H. Stanford, Jr., gave a deed for property owned by him and his wife, as tenants by entireties, which while absolute in form, was intended merely to secure a debt. A decree was passed for the sale of that and some other property, and the trustee made a sale of Stanford's interest as tenant by the entireties. A deed was made to the purchaser and Mrs. Stanford refused to deliver possession. There was an application for a writ of possession against her, and the petition having been dismissed by a decree *pro forma,* the purchaser, McCubbin, took the appeal. It was said in the opinion: "By the common law, husband and wife were considered one person. When, therefore, land was conveyed to them and their heirs, each was in

contemplation of law seized and possessed of the entire estate in fee simple, and neither could dispose of any part of it without the assent of the other. Each was entitled to the whole by reason of the legal unity of their existence; and consequently an alienation of any part by either one of them would infringe the vested right of the other. The common law on this point has never been changed in this State. *Marburg* v. *Cole,* 49 Md. 411." The Court said that under Section 43 of Article 3 of the Constitution: "The property of the wife shall be protected from the debts of her husband"—the purchaser of the husband's interest was not entitled to possession of the property as against the wife, "because thereby the wife's undivided entirety of interest in it would be destroyed, and she would be deprived of the protection which the Constitution intends to give her." In speaking of the Act of 1853, Ch. 245, which used similar language to the Constitutional provision quoted above, it was said: "This Act did not impair or alter the marital rights of the husband in his wife's property, but it placed it beyond the reach of his creditors."

JUDGE McSHERRY said in the opinion delivered by him in the Circuit Court, which was adopted by us in *Brewer* v. *Bowersox,* 92 Md. 567. "It is not because a conveyance or gift is made to husband and wife, as joint tenants that the estate by entireties arises, but it is because a conveyance or gift is made to two persons who *are* husband and wife; and since in the contemplation of the common law they are but one person, they take and can only take, not by moieties, but the entirety. The marital relation with its common law unity of two persons in one gives rise to this peculiar estate when a conveyance or gift is made to them without restrictive or qualifying words; and they hold as tenants by the entirety, not because they are declared to so hold, but because they *are* husband and wife. This estate with its incidents continues in Maryland as it existed at the common law. *McCubbin* v. *Stanford,* 85 Md. 390. It differs materially

from all other tenancies. The right of survivorship, which is one of its chief incidents, can not be destroyed except by the joint act of the two; and upon the death of either the other succeeds to the entire property or fund."

In *Jordan* v. *Reynolds,* 105 Md. 288, a husband and wife held some leasehold property as tenants by the entireties, and there was a judgment standing against the husband. The husband and wife filed a bill for the specific performance of a contract of sale of the property. The defendant resisted on the ground that the judgment was a lien on the property, and hence the title was not good and marketable. After referring to some of the cases cited above, and stating that in this State judgments create liens only because the land is made liable by statute to be seized and sold on execution, JUDGE BRISCOE said: "It seems therefore to be clear both upon reason and authority that the judgment in this case is not a lien upon the property, in the lifetime of the wife. There is nothing that can be seized and sold under an execution upon the judgment. Property held by this tenure can not be sold without the joinder of the wife, *McCubbin* v. *Stanford,* *supra,* and the judgment creditor can acquire no greater rights than those possessed by the judgment debtor."

In *Reed* v. *Reed,* 109 Md. 690, the wife purchased four lots of ground in 1896 out of her separate fund and estate and caused them to be conveyed to herself and husband, who married in 1894, as tenants by entireties. She subsequently obtained a divorce from her husband, and filed a bill praying that the property be decreed to be hers clear of any interest of her former husband, but we held that if a wife during coverture voluntarily and without any fraud or undue influence on the part of her husband conveyed property to him, a subsequent divorce does not entitle her to the entire ownership, but JUDGE THOMAS concluded the opinion of the Court by saying: "We fully concur in the conclusion reached by the Court below, and for the reasons stated and upon the authorities cited by that Court, that, as the result of the

divorce, the appellant and appellee now hold the property as tenants in common." In *Frey* v. *McGaw, et al.,* 127 Md. 23, there was a judgment against both tenants by entireties, and hence the lien attached.

Our reason for thus referring at length to these cases was to show how the tenancy by entireties is regarded in Maryland and the kind of questions in connection with them we have passed on. By expressions used in some of those cases, such as "the common law principle remains unaffected by statute," "This estate with its incidents continues in Maryland as it existed at the common law," etc., we do not understand it to have been meant that all of the incidents of a tenancy by entireties continue as at the common law, or that the common law rules which governed the use and control of a wife's interest in such a tenancy were not or could not be affected by such statutes as those passed for the benefit of married women. Indeed in *Fladung* v. *Rose,* 58 Md. 13, on page 24, JUDGE MILLER, in speaking of the provisions in the married women's Acts which had then been passed in this State, said: "In view of these provisions, it seems unreasonable to say that the legal unity and oneness of man and wife, upon which the peculiar tenancy by entireties was founded, still continues just as it existed at common law. Nor is it inconsistent with what was decided in *Marburg* v. *Cole,* to hold that the common law in this particular has been, to some extent at least, modified by our statutes."

Although it is settled in this State that neither the statute in reference to joint tenancies nor the married women's Acts have abrogated the tenancy by entireties, yet how far the latter affect the husband's rights, over such estates during coverture, is a different matter. CHIEF JUDGE ANDREWS in *Hiles* v. *Fisher,* 144 N. Y. 306, annotated in 30 L. R. A. 305, said that "the right of the husband at common law to take the rents and profits of lands held by him and his wife as tenants by the entirety, during coverture, and to assign and dispose of them during that period, did not, we apprehend,

spring from the peculiar nature of this estate. He acquired
no such right by force of the conveyance itself, and it was
not an incident thereto. It was a right which followed the
conveyance, and inured to the husband from the general
principle of the common law which vested in the husband,
*jure uxoris,* the rents and profits of his wife's lands during
their joint lives, 2 *Kent. Com.* 130; *Stewart, Husband and
Wife,* Sec. 308. The husband took the rents and profits of
lands held in entirety upon the same right that he took the
rents and profits of her other real estate, whether held by a
sole or joint title, namely, his right as husband." Although
our decisions in reference to that estate are not in all respects
in accord with those of the New York Courts, we do concur
in the above. If then it be true that the common law right
of the husband to the rents and profits of an estate by
entirety during the coverture of his wife and himself is
derived from his common law marital rights, and not as an
incident of that estate, then there can be no reason why
statutes passed for the benefit of married women can not
affect the use and control of the wife's interest in property
held by entirety, during coverture, as well as her other prop-
erty protected by statute from the husband's use and control
—notwithstanding the estate by entirety is still preserved
and such incidents as the right of survivorship, etc., remain
in full force.

In 1 *Tiffany on Modern Law of Real Property* (381),
Sec. 165, it is said: "At common law, the husband, having
the right to control and dispose of his wife's land during
their joint lives, was entitled to all the rents and profits of
land held by entireties, and not merely to one-half thereof,
and he could convey the land for the term of his life. This
power of control in the husband over the wife's share is,
however, taken away by the married women's property Acts,
hereafter referred to, since it was not an incident of the
tenancy by entireties, but was merely one of his common
law marital rights." In this State the constitutional provi-

.sious and the married women's Acts have changed the common law in some respects. A valid mortgage can not now be given by the husband on an estate held by himself and wife as tenants by entireties, *McCubbin* v. *Stanford, supra,* and a judgment against the husband can not be enforced against such an estate, but the husband and wife can convey the property so held to a purchaser, free and clear from an outstanding judgment against the husband—such judgment not constituting a lien on the land, or on the interest of the husband therein, *Jordan* v. *Reynolds, supra,* even if it be conceded that a mortgage could have been given or a judgment could have been enforced at common law. So the expression in *Marburg* v. *Cole, McCubbin* v. *Stanford, Brewer* v. *Bowersox,* 92 Md. 567, *Stieff Co.* v. *Ulrich,* 110 Md. 634, and probably other cases, that the estate by entireties with its incidents continues as at common law, is not necessarily to be construed to mean that a husband is still entitled to all the rents and profits from and the control of an estate by entirety as at common law, as such rights in the husband were not as incidents of that estate, but by virtue of the rights of a husband at common law. There is a note to *Morrill* v. *Morrill,* 138 Mich. 112, as reported in 4 A. & E. Ann. Cases, 1100, citing many cases as to the husband's right to rents and profits and control in such estates at common law, and as to the modification of his rights and concerning the wife's rights under the married women's Acts, but as we do not know the date of the deed to these parties, whether it was before or after January 1, 1899, when the Acts of 1898, Chapter 457, took effect, we will not review those cases, and of course cannot compare the statutes in those jurisdictions with those of our own when the deed was made.

But prior to the passage of the Act of 1898, Chapter 457, the common law had been very materially changed in this State—even before these parties were married. It will be remembered that this was leasehold and hence personal prop-

erty, and therefore the rules applicable to it are different in some respects from what they would be if it was real estate, and we were relying on the Act of 1898. In the recent case of *Jeavons* v. *Pittman,* 126 Md. 650, JUDGE PATTISON pointed out the distinction between such cases as *Safe Deposit Co.* v. *Gittings,* 103 Md. 485, and *Harris* v. *Whiteley,* 98 Md. 430, and *Slingluff* v. *Hubner,* 101 Md. 652. If the deed was made after January 1st, 1899, then of course the provisions of the Act of 1898 apply, and if it was made before that time we do not deem it necessary to prolong this opinion by determining how far they apply to leasehold property, as prior to that time the powers of married women had been sufficiently enlarged in this State to enable us to dispose of this case, as presented by the Record. By section 1 of Article 45 of Code of 1888, all property acquired by a married woman in any of the many ways mentioned and as amended by Chapter 267 of Acts of 1892, all of her property acquired in any of those ways, *"or in any other manner,"* was protected from the debts of her husband, and not in any way liable for the payment thereof, and by Section 2 of that Article, as amended by Chapter 394 of the Acts of 1890, the property acquired or owned by her under Section 1 she held for her separate use, with power of devising the same as fully as if she were a *feme sole,* she could convey it by a joint deed with her husband, or authorize an attorney or agent to sell and convey it, by power of attorney jointly with her husband, and she could be sued jointly with her husband, on any note, bill of exchange, single bill, bond, contract or agreement executed jointly with her husband, and she could employ counsel and defend such action or suit separately or jointly with her husband. If she had no trustee she could sue by her next friend at law or in equity for the recovery, security or protection of her property, as fully as if she were a *feme sole,* she could by section 12 of that Article convey her real or personal property, if her husband joined in the conveyance, by deed, mortgage or bill of sale, and

she could relinquish her dower in any real estate by the joint deed of herself and husband, or by her separate deed, and she had other powers and liabilities. She can now undoubtedly sue in her own name for the protection of her property, regardless of when she acquired her interest in it. Such being the law of this State, it would be illogical and incorrect to say that the husband still has the same control over their property held as tenants by the entireties that he had by virtue of his common law rights.

We have thus gone more at length than perhaps was necessary or desirable into this character of estate, but we were leading up to the question as to whether the husband has such control over that estate as he can arbitrarily say whether insurance money recovered for injury to property thus held can, in his discretion, be used or not used for the restoration of the property. There would seem to be no doubt about the right of the wife to sue the husband in equity. Section 5 of Article 45 authorizes married women to sue for the recovery, security or protection of their property, and if section 20 of that Article be not applicable to this case, it would seem that the plaintiff could sue her husband as well as any other person for the protection of her property, under Section 5. The opinion of the lower Court, adopted by this Court, in *Wilson* v. *Wilson,* 86 Md. 638, says: "The weight of authority seems to be that either can sue the other, in equity for the protection of his or her property." That was before the Act of 1898 was passed.

We have been referred to no case directly on the question now before us, but a Court of Equity must have power to grant proper relief under the circumstances of this case. The husband and wife were living together in this house until the husband left her. We have nothing to do with, and have no knowledge of the cause of their separation, but it is alleged in the bill that he abandoned and deserted her. We understand from the bill that she was left in the house and remained there until she was required to leave on account of the fire. The insurance was presumably taken on the prop-

erty for its protection, and hence for the benefit of both tenants by the entireties. When one of them refuses to allow the money received from the insurance company to be used in repairing and restoring the property insured, the other might suffer great loss if a Court of Equity could furnish no relief. We realize that there may be difficulties which do not now appear, but the defendant (appellant) should be required to answer, and the Court will then be in a position to determine the precise relief to be granted. The allegations of the bill, if sustained, are sufficient to justify the Court in appointing a receiver in order to protect the property from further loss, and deterioration from want of repairs, and if the Court is of opinion that it is necessary for the preservation of the property from further loss after the delay occasioned by this appeal, to appoint a receiver at once it should do so for that purpose.

But before determining whether the receiver should be authorized and directed to use the insurance money in repairing the house, the Court should either authorize him to employ some competent person to ascertain what is necessary and proper to be done to the property and then ask for bids for making the repairs, or direct that testimony be first taken to ascertain what is necessary to be done, and the cost of such necessary and proper repairs. If the Court is of the opinion that the property can be repaired at a cost not materially exceeding the insurance money, then it should authorize the receiver to have that done with that money. If the Court is satisfied that it will require a sum materially in excess of the amount of the insurance money, it can decline to authorize the repairs to be made, unless both parties give their consent to its being done, or one of them provides for the excess over and above the insurance money. If the Court reaches that conclusion, and the excess is not provided for by the parties, or one of them, it may become necessary to sell the property. We are not sufficiently aware of existing conditions to express any definite opinion on that subject—further than to say that if the lot be left unimproved, and

so unproductive as to be merely an expense to the parties, or not to afford a reasonable income from what is invested in it, it can be sold. There is according to the bill a charge of $50.00 upon it for ground rent, which with the taxes added might in time cause considerable loss, if little or no income is derived from it. We are of the opinion that if the facts justify it, a proceeding could be taken under section 228 of Article 16 of the Code for the sale of the lot and the investment of the proceeds. In *Druid Park Heights Co.* v. *Oettinger,* 53 Md., on page 63, it was said: "Under our stat-ute, 1868, Ch. 273, Courts of equity, with all the parties be-fore them, who are interested, may decree the sale of any kind of an estate." That is now section 228 referred to above. See also *Downes* v. *Long,* 79 Md., on page 390. Possibly it could be sold under some other statute or authority vested in a Court of Equity, but the statute referred to would seem to be sufficient.

If sold, the proceeds of sale, together with the insurance money, should be invested under the order of the Court, and one-half of the net income paid to each party until the death of one, when the corpus should be paid to the survivor, unless it be sooner distributed, either by agreement of the parties, or by order of the Court, in case there be such a change of conditions as will under the law applicable justify such distribution.

> *Order affirmed, and cause remanded*
> *the appellant to pay the costs.*