1821.

Titus
v.
Neilson.

## Titus *against* Neilson and others.

The Courts of law having decided, that a mortgagor in possession of land mortgaged in fee, before foreclosure or entry by the mortgagee, has (in regard to all the rest of the world, except the mortgagee) the legal seisin, and that his equity of redemption might be sold on execution; and that in case of his death, while in possession, and before foreclosure, his widow was entitled to her dower in the land mortgaged, of which she could not be deprived by a purchaser of the equity of redemption of her husband; this Court will follow the doctrine of the Courts of law, and allow the widow her dower out of the proceeds of the sale of the mortgaged premises, on a bill for a foreclosure and sale.

As where the wife of a mortgagor joined in a mortgage in fee; and the mortgagor, afterwards, executed a second mortgage, in which the wife refused to join; and after a decree for sale, on a bill filed by the first mortgagee, but before sale, the mortgagor died; held, that his widow was entitled to her dower out of the surplus proceeds remaining after the first mortgage debt was satisfied.

August 2d.

THE petition of *Catherine Neilson* was presented, claiming dower out of the proceeds of the sale of an equity of redemption, in certain mortgaged premises.

It appeared from the petition, that her husband *William Neilson*, during the coverture, executed a mortgage to the plaintiff, *William Titus*, in fee, to secure the payment of 10,000 dollars, and that she joined in the mortgage, and duly executed and acknowledged it. Her husband, afterwards, gave another mortgage upon the same land, to the defendant *Coles*, to secure the payment of a sum of money to him; but she did not join in this mortgage. *Titus* filed a bill to foreclose his mortgage, and made *Neilson* and his wife, and *Coles*, the second mortgagee, parties. The petitioner, in her answer, admitted all the facts, and prayed that her rights might be protected and preserved; and the defendant *Coles*, in his answer, claimed to be paid his debt out of the proceeds of the mortgaged premises, next after the payment of the monies due on the plaintiff's mortgage. On the 6th of *November*, 1820, the cause was brought to a final hearing, and the mortgaged premises decreed to be sold, and the proceeds of the sale to be brought into Court, and the debt and costs due to the plantiff *Titus* first to be paid, and after certain other costs were deducted, that then two third parts of the residue of the proceeds be paid to *Coles*, the second mortgagee, and that the other third part of the residue "abide the further order of the Court." On the 26th of *November*, and before the sale, *William Neilson*, the mortgagor, died. The sale took place according to the decree, and the defendant *Coles* became the purchaser, and after the payments directed by the decree to be made, 2,281 dollars, being one third part of the net surplus, was retained in Court, subject to the question raised by the petition, whether the widow of *Neilson* was entitled to dower in the equity of redemption. She prayed that the said sum might be invested in productive stock, and the interest or income thereof paid to her, during life.

The prayer of the petitioner was resisted by the defendant *Coles*, who claimed the whole of the surplus proceeds towards satisfaction of his mortgage, and he denied that

1821.

TITUS
v.
NEILSON.

the widow was entitled to dower in the equity of redemp-
tion.

*B. Robinson*, for the petitioner.   He cited 7 *Johns. Rep.*
278. 15 *Johns. Rep.* 321. 1 *Caines Ca. in Er.* 47. 4 *Johns.
Rep.* 41. 6 *Johns. Rep.* 295. 1 *Johns. Ch. Rep.* 45. 55, 56.

*P. W. Radcliff*, contra.   He cited *Prec. Ch.* 65. 97. 336.
10 *Ves.* 263.   1 *Bl. Com.* 445, notes.   *Cruise's Dig.* tit.
12. *Trust*, ch. 2.  sec. 12.   2 *P. Wm.* 700.   *Ca. temp.
Talbot*, 138.  2 *Atk.* 525.  3 *P. Wm.* 229.   2 *P. Wm.*
719. note.  1 *Bro. C. C.* 326.  1 *Pow. on Mortg.* 35.
2 *Bl. Com.* 132.   1 *Cruise's Dig.* tit. 15. ch. 3. sec. 9.
6 *Johns. Rep.* 290.   7 *Johns. Rep.* 278.   *Prec. in Chan.*
137.

THE CHANCELLOR.   The claim of the widow must be
admitted, according to a series of decisions in the Courts
of this State.   In *England*, dower is considered as a mere
legal right, and equity follows the law, and will not create
the right where it does not subsist at law.   It is on this
principle, according to Lord *Redesdale*, (2 *Sch.* and *Lef.*
388.) that a Court of Equity will not allow dower of an
equity of redemption reserved upon a mortgage in fee,
though there may be dower of an equity of redemption
upon a mortgage for a term of years, because in that case,
the law gives dower, subject to the term.   The justice,
however, of allowing dower of an equitable estate, seems
to have been very generally felt and acknowledged in the
*English* Courts of Equity.   But we have nothing to do,
at present, with the *English* adjudications on the subject,
for as our Courts of law do now allow dower, in certain
cases, of an equity of redemption, this Court, according to
the doctrine referred to, ought to follow the law, and also
allow dower out of the proceeds of the equity of redemp-

tion, and which proceeds have in this case been placed be-
fore the Court.

In *Waters* v. *Stewart*, (1 *Caines Cases in Error*, 47.)
in which the decree of this Court was, in 1804, unanimously
affirmed in the Court of Errors, it was established, that an
equity of redemption reserved upon a mortgage in fee, might
be sold on execution at law against the mortgagor, as *real
estate*, so long as the mortgagor was in possession, and
there had not been a foreclosure of the mortgage. The
purchaser would take as the mortgagor held, subject to the
lien and rights of the mortgagee. According to this deci-
sion, the mortgagor was regarded as seised at law, before
foreclosure or entry by the mortgagee. In pursuance of
this decision, it was decided by the Supreme Court, in 1809,
in *Jackson* v. *Willard*, (4 *Johns. Rep.* 41.) that the interest
of the mortgagee in the mortgaged premises, before fore-
closure or entry by him, was not the subject of sale on ex-
ecution at law as real estate. The one decision was a
necessary consequence of the doctrine in the other. This
doctrine was first applied in the case of *Hitchcock* v. *Har-
rington*, in 1810, (6 *Johns. Rep.* 290.) to the case of dower.
The mortgagor died in possession after the debt became
due, and before foreclosure ; and he was held to have died
seised, in respect to the dower of his wife, and that she was
entitled to dower, as against a purchaser holding under
the heir. But in that case, the mortgage was no longer sub-
sisting, and had been paid off and satisfied by the purchaser;
and the case is only worthy of notice in this review, for the
recognition which it contains of the doctrine, that the mort-
gagor, in respect to all the world but the mortgagee, con-
tinued seised in law, so long as the mortgagee had not exert-
ed his right of entry or foreclosure under his mortgage, and
that such a seisin was sufficient for the wife's dower. The
case of *Collins* v. *Torry*, (7 *Johns. Rep.* 278.) went a step
further, and held that the estate of the mortgagor was the
real estate at law, and that the widow of a person purchasing

of the mortgagor, *subsequent to the mortgage*, might recover her dower, against a *purchaser* under the husband, who could not set up the mortgage, even as a subsisting title, there having been no entry or foreclosure under it. In that case, however, the mortgage was not considered as any longer a subsisting title ; but in respect to the general doctrine, that the mortgagor, before entry or foreclosure, was seised, and that no purchaser of the equity could set it up in bar of dower, the Court go on and observe, that it did, " in effect, enable the wife to be endowed of an equity of redemption, and under the above limitations, it was just, and consistent with principle, that she should be endowed of it. We cannot now, (alluding to the above decisions,) with any justice or consistency, say, that the interest of the mortgagor is the real estate at law, and yet that it is not such an estate, when the mortgagor's widow comes to ask her dower of the heir or grantee of her husband. The plain and necessary rule is, to allow her the dower, which she must take, as the heir or purchaser takes the estate, subject to the mortgage."

It is to be observed, that the mortgage, in that case, was given by a person from whom the husband purchased, and therefore, the interest of the wife, as well as of the husband, subsequently acquired, might have been held subject to the mortgage. It could not have been intended, by any observations in the case, that if the husband, during coverture, and while seized of the equity of redemption, should mortgage that equity, that the right of dower of the wife could be affected by *that* mortgage any more than by an absolute sale of the equity.

The case of *Coles* v. *Coles, 15 Johns. Rep. 319.*) went a step still further, and held, that where a person seised of land in fee, mortgages it, and afterwards marries, his widow was entitled to dower out of that equity of redemption, against the purchaser of that equity, though the mortgage

was still subsisting. Here was a final and full establish-
ment in our Courts of law of the principle not admitted in
the *English* Courts of law, that a wife could be endowed
of an equity of redemption arising upon a mortgage in fee,
and this Court ought to follow the rule of law. It ought to
do so, according to the rule and practice of the Courts of
Equity in *England,* in the like case, and because the doctrine
recognizing the legal title of the mortgagor before fore-
closure, first originated in this Court, and was confirmed in
the Court of Appeals, and, finally, because, it is a most
just and reasonable doctrine, and has been so acknowledg-
ed throughout the history of the cases.

When *Coles* took his second mortgage, he took it as a
purchaser would have taken the equity, subject to the
right of dower of the wife; and if he did not deem the secu-
rity sufficient, under that condition, he should, as the first
mortgagee did, have procured a release of her right.
When the wife joined in the first mortgage, she only part-
ed with her right of dower to the extent of that mortgage
debt, and she would have been entitled to have redeemed
the mortgage, upon her husband's death, for the sake of
her dower, and to reinstate herself in all her rights. If she
consents to a sale under the first mortgage, it is with a re-
servation of her rights; and if the right of dower be con-
summated by the husband's death, before the sale, (for it
is clear, that she would have had no claim upon the pro-
ceeds, after the satisfaction of the first mortgage, if her hus-
band had been living,) she has a good right in equity to
have her dower satisfied out of the surplus proceeds,
which represent the equity of redemption. Suppose the
land could properly have been sold in parcels, and the di-
rection in the decree had been to have sold only one par-
cel of the mortgaged premises, sufficient to have satisfied
the first mortgage, she would have been most clearly en-
titled to her dower in the residue of the land, in preference

to the claims of the second mortgagee ; and then, according to the doctrine on the part of *Coles*, the second mortgagee, her right must depend upon a circumstance resting so entirely in discretion, as the mode to be adopted for satisfying the mortgage sought to be foreclosed by the bill. Her right must be of a more fixed and stable character.

In *Tabele* v. *Tabele*, (1 *Johns. Ch. Rep.* 45.) there was no question raised, or opposite interests set up, but it seemed to be assumed, as the course of the Court in such cases, to allow to the widow her dower out of the surplus proceeds of the mortgaged premises, after satisfying the mortgage in which she had joined. I do not perceive what right a subsequent mortgagee of the husband's equity, has to that equity or its proceeds, in a case in which the wife was no party to the mortgage, which any subsequent purchaser or other lawful representative of the husband, would not equally have.

I shall accordingly grant the prayer of the petition, by directing, that the sum of 2,281 dollars, be invested in government stock, and the income thereof, as it may be received from time to time, be paid to the petitioner during her natural life, and that the principal, after her death, and the income thereafter accruing, remain subject to the further order of the Court. Her claim to costs against him is denied.

Order accordingly.