(Decided 15th March, 1872.)

---

FREDERICK RICE, and others, *vs.* CAROLINE A. HOFFMAN, by her next friend, EDMUND M. HOFFMAN. CAROLINE A. HOFFMAN, by her next friend, EDMUND M. HOFFMAN *vs.* FREDERICK RICE, and others.

*Husband and Wife—How far a Wife's Real estate, acquired before 1853, is liable for her Husband's debts.*

The real estate of a married woman, acquired before 1853, is exempt during her life, from execution for the debts of her husband.

The proceeds arising from the sale of such real estate, under a decree for partition, stand in the place of the real estate, and only so much of the

Rice, *et al. vs* Hoffman.

proceeds as may be allowed to the husband in lieu of his interest as tenant by the curtesy, is liable to his creditors upon the death of the wife.

CROSS APPEALS from the Circuit Court of Baltimore City.

Philip Horn died in the year 1834, intestate, leaving a large real and personal property, an undivided ninth part of which descended to his daughter Caroline A., who intermarried with Ephraim Hoffman, in July, 1845, and had a child born alive in the following year. Under a bill for partition, filed in the year 1869, a part of the real and leasehold estate of the deceased was sold by trustees; and attachments were laid in their hands by the creditors of Ephraim, upon judgments recovered against him in 1869 and 1870. The auditor stated an account in which he allowed Mrs. Hoffman one-ninth of the net proceeds of sale. The creditors of her husband excepted to this allowance. After the hearing of the exceptions, the Court (PINKNEY, J.,) decided that the proceeds of the leasehold property were liable to the creditors of the husband, but that the proceeds of the real estate must be regarded as standing in the place of the real estate, and only the allowance which might be made to the husband, in lieu of his life estate as tenant by the curtesy, was liable to his creditors upon the death of his wife. The auditor thereupon stated an account in which he distributed to the trustees, to await the claims of the attaching creditors the amount of the leasehold and personal property belonging to Mrs. Hoffman, also an account showing the value of Ephraim Hoffman's interest, as tenant by the curtesy, and an account allowing the whole amount to the trustees, subject to the attachments of the creditors. The Court passed an order ratifying the first account and rejecting the others.

From this order both parties appealed.

The causes were argued before BARTOL, C. J., BOWIE, BRENT, GRASON and ROBINSON, J.

*Samuel Snowden,* for the creditors.

After the marriage of Ephraim Hoffman and Caroline A., in 1845, and issue was born alive in 1846, Ephraim became entitled to a tenancy by the curtesy initiate in all the real estate belonging to his wife, according to the well settled rule of the common law, which had not then been changed by statute. *Tyler's Law of Coverture, &c.,* 398; *Mutual Ins. Co. vs. Deale,* 18 *Md.,* 47; *Wright vs. Wright,* 2 *Md.,* 453; *Schindel vs. Schindel,* 12 *Md.,* 108.

This right having been vested in the husband, he could not be divested by the subsequent statutes in relation to the property of married women; and they cannot be construed to have a retrospective operation. *Rose vs. Sanderson,* 38 *Ill.,* 247; *Williams vs. Johnson,* 30 *Md.,* 507.

The leasehold estate vested in the husband at the time of the marriage, and the proceeds thereof are therefore liable to the claims of his creditors.

The Act of 1841, ch. 161, having been omitted from the Code, the interest of the husband in both the real and leasehold property is liable to the claims of the creditors. *Johns vs. Hodges, &c.,* 31 *Md.,* 515; *Albert vs. White,* 33 *Md.,* 297.

The Act of 1841 did not deprive the husband of his interest at common law, in the real estate of his wife, but only prohibited the sale of such interest during her life—the lien of the judgment still continuing. *Anderson vs. Tydings,* 8 *Md.,* 443. It was therefore only a suspension of the remedy of the creditor during the life of the wife, and this the legislature had a right to change and alter at pleasure. *Potter's Dwarris,* 471, &c.

The order of ratification should be affirmed; and the order rejecting the account shewing the interest of Ephraim Hoffman as tenant by curtesy should be reversed, and the account ratified.

*Allen E. Forrester* and *Wm. F. Frick,* for Mrs. Hoffman.

In so far as the fund in this case consists of sales of the real estate of Mrs. Hoffman, which she owned at the time of her marriage in 1845, it is protected by the Act of 1841, ch. 161, which provides "that no real estate hereafter acquired by marriage, shall be liable to execution during the life of the wife, for debts due from the husband." If that Act be still in force, it is clear that the creditors of her husband cannot reach this fund, as they attempt to do.

The property will be converted into money, when paid for by the purchasers from the trustees, but as the purpose of the Act was to prevent the lands of the wife from being *liable* for the debts of the husband, during their joint lives, a conversion of them into money, by a proceeding *in invitum* against the wife, for partition and sale, cannot have the effect of creating any such liability. *Hall vs. Hall,* 4 *Md., Ch. Dec.,* 283; *Logan vs. McGill and wife,* 8 *Md.,* 470; *Smith, &c., vs. McAtee,* 27 *Md.,* 420.

It is said however, on the part of the creditors, that this Act is not contained in the Code, and is therefore abrogated and impliedly repealed. But section 1 of Article 1 of the Code, provides that the adoption of the Code shall not impair any right vested, or discharge any contract existing at that period. When the contract of marriage was consummated between Mr. and Mrs. Hoffman, the law of 1841 protected her property from liability for his debts; and it would be consistent neither with the true meaning and construction of this section of the Code, nor with the provision of the Constitution of the United States, in reference to the same subject matter—that the rights secured by law to Mrs. Hoffman at the time of her marriage, should thereafter, during her life, be taken away, or impaired. 4 *Wheaton,* 696; 1 *Howard,* 319.

The property (both real and personal) of Mrs. Hoffman, "belonging to her at the time of her marriage," also became protected from the debts of her husband, and not liable in any way for the payment thereof by the Act of 1853, ch. 245, subsequently reënacted in Article 45 of the Code.

If this Act and the Code apply to the case, the fund in Court, not only in so far as it arises from the sales of Mrs. Hoffman's *realty*—but also from the sales of her *leasehold and personal* estate, is protected from the claim of the creditors of her husband. It is said that this Act refers only to the case of marriages contracted after its passage. But the act does not plainly by its terms so declare; and no reason can be given for supposing that the Legislature intended to make any such unwarrantable distinction. All that can justly be said, in limitation of its provisions, is that it was not meant to apply to creditors of the husband, who were such *prior* to the passage of the Act.

This Court, in its decisions upon this Act, has always drawn a distinction between the rights of the husband and those of his creditors. The Act was not intended to affect the former—but only the latter. Therefore, whatever may be the rights of Mr. Hoffman, as tenant by the curtesy of his wife's real estate, or his right to claim and possess himself absolutely of her chattels real—it is not competent for his creditors, (without any intervention on his part,) to interpose in this case, and claim that his curtesy rights shall be calculated and allowed, and his marital claims to the leasehold property be also allowed—merely for the purpose of enabling his creditors, who became such since the passage of the Code, to reach those funds by an attachment by way of execution. *Schindel vs. Schindel,* 12 *Md.,* 313; *Weems vs. Weems, et al.,* 19 *Md.,* 345.

The whole of Mrs. Hoffman's property in this cause, is " protected from the debts of her husband " by section 43 of the Constitution of 1867. This Constitution differs in its provisions in this respect, from those of 1851 and 1864, as it executes itself: while the former provided only for the passage of laws by the Legislature on that subject. As the creditor in this case became such after the adoption of the Constitution of 1867, the rights of the wife were in nowise impaired by it. The creditors trusted Mr. Hoffman, with

knowledge of the existence of a paramount law of the State, protecting all his wife's property absolutely from liability for their claims.

They cannot be permitted, by any contrivance, to defeat this provision in favor of the wife—which is now finally a fundamental rule of law, which even the Legislature cannot abrogate. *Thomas vs. Owens,* 4 *Md.,* 225, 226.

ROBINSON, J., delivered the opinion of the Court.

Philip Horn died in 1834, seized and possessed of a large real and personal estate. Caroline A. Hoffman, who intermarried with Ephraim Hoffman in 1845, is a daughter of the said Philip, and entitled to an undivided one-ninth part of said property.

Under a bill filed for partition in 1869, part of the real and leasehold estate of the said Philip was sold, and the question is, whether the distributive share of Caroline A. Hoffman, arising from the sale thereof, is liable to execution for the debts of her husband, contracted in 1869.

I. No question can arise, we think, in regard to the proceeds of sale from the leasehold estate. By the law of this State, *as it stood at the time of the marriage,* the husband was entitled to the *chattels real* of the wife, with power to sell, assign or transfer the same at any time during the *coverture;* and in whatever light this *interest* or *right* of the husband thus acquired under the marriage contract may be viewed, we are of opinion that it was not taken away, nor in any manner affected by the subsequent legislation in regard to the rights of married women. If so, it must follow that the proceeds arising from the sale of the *chattels real* belong to the husband, and are therefore liable to execution for his debts.

II.—*In regard to the real estate.*

By the marriage, the husband was entitled at common law to the rents and profits of the wife's real estate during their joint lives, or as stated in some of the cases, during the cover-

ture. Upon the birth of a child alive, he became tenant by the *curtesy initiate,* and upon the death of the wife, to a life estate in the lands and tenements of which she was seized during the marriage. This interest of the husband was liable to be taken in execution and sold at any time for his debts, until the act of 1841, chapter 161, which provided, " That no real estate hereafter acquired by marriage, should be liable to execution during the life of the wife, for debts due from the husband." The effect of this Act, according to the decision in *Logan vs. McGill,* 8 *Md.,* 469, was not to destroy the tenancy by curtesy, but to suspend the right of execution on the part of the husband's creditors, during the life of the wife.

It is contended however, that the provisions of the Act of 1841 are omitted in Article 45, of the Code, and that Ephraim Hoffman being a tenant by *curtesy initiate,* his interest in the real estate of his wife may be taken and sold under execution. Article 45, of the Code, however, must be construed in the light of the previous legislation on the subject. By the Act of 1841, the real estate of the wife was protected from sale for the husband's debts during her life. Then came the Act of 1842, chapter 293, providing that a married woman might become seized or possessed of any property real or slaves, in her own name, and as of her own property ; and then the Act of 1853, chapter 245, passed in pursuance of the Constitution of 1851, which exempted all the property, both real and personal, of the wife from liability on account of the debts of the husband. Such then were the statutes in regard to the property of married women at the time of the adoption of the Code. Now, section 1, of Article 45, of the Code, provides " that the property, real and personal, belonging to a woman at the time of her marriage, and all property which she may acquire or receive by purchase, gift, grant, devise, bequest, or in a course of distribution, shall be protected from the debts of the husband, and not in any way liable for the payment thereof," &c.    *    *    *

Having thus exempted all the property of the wife, both real and personal, from liability on account of the husband's debts, it was unnecessary to add in terms the provisions of the Act of 1841. It would be a strange construction to say, that in thus exempting the wife's property of every kind and description, the Code had in effect repealed the provisions of the Act of 1841, so as to allow her real estate to be sold for the debts of her husband. Such a construction surely never entered the minds of the codifiers, nor do we think it warranted by a fair interpretation of the Code itself. The Code was intended mainly as a revision or embodiment of preëxisting statutes, and having provided in express terms that the real and personal property of the wife should be exempt from all liability, it was hardly necessary to add that her real estate should not be sold for the debts of the husband during her life.

But it is contended that the real estate being converted by a sale under a decree of the Court for partition, the proceeds arising therefrom belong to the husband, and are therefore liable to execution by his creditors. " The proposition then, is," as stated by Chancellor JOHNSON, in *Hall vs. Hall,* 4 *Md., Ch. Dec.,* 288, " that though the real estate of the wife may not be liable for the husband's debts during the life of the wife, if for any purpose it becomes necessary to convert that real estate, the protection of the law is withdrawn, and the creditors of the husband, so far as his interest is concerned, may seize upon it. If this be so, it would follow in many cases that the law which was intended to shield the real estate of the wife during life from the claims of the husband's creditors, would be illusory and ineffectual, as it frequently happens that a sale for the purpose of partition is absolutely necessary, and may be enforced against the consent of the wife." And the Chancellor further says:

" In this case the wife is still living, and therefore, if there had been no sale, the creditors of the husband could not now resort to his interest in her land to pay their claims against

him, and as the money, the proceeds of the land, must be regarded as standing in the place of the land, it appears to me the Act of Assembly extends to and protects it."

We are of opinion therefore, that the proceeds arising from the sale of the wife's real estate, must be regarded as standing in the place of the real estate, and that only so much thereof as may be allowed to the husband, in lieu of his interest as tenant by curtesy, is liable to his creditors upon the death of the wife.

*Order affirmed.*

(Decided 15th March, 1872.)