# SILBERMAN *v.* JACOBS and SILBERMAN

[No. 125 (Adv.), September Term, 1970.]

*Decided July 9, 1970.*

2

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Douglas D. Connah, Jr.,* and *Russell R. Reno, Jr.,* for appellant.

*George W. Liebmann,* with whom were *Shale D. Stiller* and *Roger D. Redden* on the brief, for appellees.

BARNES, J., delivered the opinion of the Court.

The General Assembly of Maryland, by the Acts of 1969, Chapter 3 enacted a statute governing the estates of decedents generally. The new statute, Code (1957, 1969 Repl. Vol.), included the following sections:

"Subtitle III"
* * *

"Sec. 3-202. *Dower and curtesy abolished.*

The estates of dower and curtesy are abolished."
* * *

"Subtitle XII"
* * *

"Sec. 12-102. *Applicability.*

Unless otherwise specifically provided in another section of another subtitle of this article, the provisions of this article shall apply as follows:

(a) Subtitles. . .III. . .shall apply to estates of decedents dying on or after January 1, 1970."

The present appeal presents to us for resolution questions in regard to the constitutionality and effect of these sections.

The facts are not in dispute. The bill of complaint for declaratory judgment filed on February 11, 1970, in the Circuit Court of Baltimore City by appellees, Carol Joan

Jacobs and Morton L. Silberman, plaintiffs below, against the appellant, Stanley James Silberman, alleged and the answer admitted the following:

The defendant, Stanley J. Silberman, was the contract purchaser under two contracts for the sale of two fee simple parcels of land in Baltimore City, being two annual ground rents for $21.50 and $36.00 respectively. These contracts of sale provided for settlement on February 2, 1970. The plaintiff, Carol Joan Jacobs, a married woman, was married to her present husband prior to January 1, 1970, and had not been previously married. The plaintiff, Morton L. Silberman, was married to his present wife prior to January 1, 1970, and had not been previously married. The ground rents owned by the respective plaintiffs had been acquired by them prior to January 1, 1970. It had been stipulated between the parties that the ground rent owned by Carol Joan Jacobs was not acquired by her as part of her sole and separate estate and that the ground rents owned by both of the plaintiffs were acquired by their own funds prior to their respective marriages. At the time of settlement, the plaintiffs were ready, willing and able to settle, but the defendant refused to settle because the spouses of the respective plaintiffs would not join in the respective deeds of conveyance. The defendant advised the plaintiffs at the time of settlement that the joinder of the spouses of the respective plaintiffs was a necessary condition of the defendant's obtaining a title free from any claims of dower or curtesy, notwithstanding the purported abolitions of the estates of dower and curtesy by Section 3-202 of the new Article 93 enacted by Chapter 3 of the Acts of 1969.

Title insurance companies, which maintain offices in Baltimore City, have taken and continue presently to maintain the position that they will require the joinder of spouses to deeds of real property inasmuch as questions have been raised in regard to the validity and the application of Section 3-202. Attached as Exhibit B to the bill of complaint was a notice directed by the Title Guarantee Company to "All Title Examiners, Agencies and

4

Approved Attorneys" on December 19, 1969, stating that "the company will continue as in the past to require the signature of spouses after January 1, 1970 until such time as the Court of Appeals has construed the above section [Section 3-202] which we understand will be in the very near future."

The case because of its public importance was advanced for oral argument and was duly heard by Judge Perrott in the Circuit Court of Baltimore City on February 25, 1970. On April 23, 1970, the Circuit Court entered a decree declaring that the provisions of Section 3-202 are constitutional, valid and effective in regard to all fee simple properties owned by married persons on and after January 1, 1970, whether acquired by them before or after January 1, 1970, and that the joinder of spouses of the respective plaintiffs was not required for them to convey a good and merchantable title to the ground rents. A timely appeal was filed to this Court from that decree. Judge Perrott filed a comprehensive and helpful opinion which we have carefully considered.

Two basic questions are presented to us by the appeal:

(1) Do the Constitutions of the United States and of this State prohibit the General Assembly of Maryland from enacting a statute abolishing inchoate rights of dower?

(2) Does Section 3-202, which provides that the "estates" of dower and curtesy are abolished, abolish inchoate rights of dower, not normally considered to be "estates"?

In our opinion there is no constitutional prohibition preventing the enactment of Section 3-202 and, as properly construed, the statute effectively abolishes inchoate rights of dower. Thus, we shall affirm the decree of April 23, 1970.

(1)

In our opinion, no provisions of either the Constitution of the United States or the Constitution of the State of Maryland prohibit the enactment by the General Assembly of Maryland of a statute abolishing inchoate rights of dower.

We should first consider the nature of dower at common law and in Maryland at the time the Act of 1969, Chap. 3 was passed and became effective.

The history of dower is carefully traced by Professor George L. Haskins of the University of Pennsylvania Law School in Part 5 "Marital Estates," Chapter 1 "Dower" in 1 *American Law of Property* (1952) § 5.1 et seq. See also 3 Vernier, *American Family Laws* (1935) and Haskins, *The Development of Common Law Dower,* 62 Harv.L.Rev. 42 (1948). Professor Haskins points out that dower was long known in the English law and antedated the Norman Conquest in 1066. He states ". . .its precise beginnings are lost in the dim antiquities of the Germanic law which prevailed in England before the Conquest." *Id.* § 5.2, p. 618.

At the time of Littleton (c. 1475) see *Littleton's Tenures,* § 51, there were five species of dower in England: (1) dower *ad ostium ecclesiae,* where a man of full age, on coming to the church door to be married, endowed his wife with a certain portion of his lands; (2) dower *ex assensu patris* which was different from dower *ad ostium ecclesiae* only in being made out of the lands of the father of the husband and with the father's consent; (3) dower by common law, where the widow was entitled during her life to a one-third part of all the lands of which her husband was seised in law or in fact during coverture and which any issue she might have had might by possibility have inherited; (4) dower by custom, where a widow became entitled to a specified portion of her husband's lands as a consequence of some local or particular custom; and, (5) dower *de la pluis belle* (or *de la pluis beale*), where the widow on suing the guardian in chivalry for dower, was required by him to endow himself of the fairest portion of any lands she might hold as guardian in socage, and thus released from dower the lands of her husband held in chivalry. When military tenures were abolished, this form of dower was abolished also. See *Blackstone, Commentaries* (Lewis ed.), book 2, p. 132.

The dower by custom was of a local nature and did not continue into the later common law.

As Mr. Justice Swayne stated, for the Supreme Court of the United States, in *Randall v. Kreiger,* 23 Wall. (90 U. S.) 137, 147-148 (1874) :

> "Dower by the common law was of three kinds : *Ad ostium ecclesiae, Ex assensu patris,* and that which in the absence of the others the law pre- scribed. The two former were founded in con- tract. The latter was the creature of the law. Dower *Ad ostium ecclesiae* and *Ex assensu pa- tris* were abolished in England by a statute of the 3rd and 4th William IV, Ch. 105. The dower given by law is the only kind which has since existed in England, and it is believed to be the only kind which ever obtained in this country."

Dower was not a part of the feudal system of tenure but was rather a survival of more ancient concepts. It was inconsistent with the emphasis on succession to blood kin in the feudal system of tenure and "it became a great clog to alienations, and was otherwise inconvenient to families" as Sir William Blackstone stated. See *Black- stone, Commentaries, supra,* p. 136. Professor Haskins observed in 1 *American Law of Property* (1952), Sec- tion 5.4, p. 631 :

> "The chief changes in the law of dower after Littleton's time were in the direction of devis- ing expedients for defeating it. Because dower was one of the few restrictions on the free alien- ability of land, methods of defeating it were worked out by parliament, by the courts and by conveyancers. Briefly, it may be said that those methods were : (1) jointures created under the Statute of Uses; (2) trusts, out of which courts of equity refused dower; and (3) powers of ap- pointment, under which a wife might be de- prived of dower and yet the husband might have all the advantages of an estate of inheritance.

"Dower *de la pluis beale* was abolished in 1660, dower *ad ostium ecclesiae* and *ex assensu patris* in 1833. The Dower Act of 1833 empowered a husband to deprive his wife of common law dower by his express act. The Administration of Estates Act of 1925 abolished dower completely."

In Maryland only dower by common law became part of the Maryland system of tenure. Judge (later Chief Judge) Prescott, for the Court, in *Lefteris v. Poole,* 234 Md. 34, 38, 198 A. 2d 250, 252 (1964), defined dower in Maryland as follows:

"Dower is a common-law right of a surviving widow to a life estate in one-third of the inheritable real estate owned by the husband during the coverture, which right, prior to the husband's decease, is said to be inchoate, and after his death it becomes consummate. *Chew v. Chew,* 1 Md. 163, 172; Venable, *The Law of Real Property, Leasehold Estates in Maryland,* pp. 21, 22; 4 Kent Com. 35-72; *United States v. Certain Parcels of Land, Etc.,* 46 F.Supp. 441 (D.C., D.Md.)."

See *Buchanan v. Deshon,* 1 Har. & G. 280, 289 (1827).

In *United States v. Certain Parcels of Land,* 46 F.Supp. 441, 444 (D.Md. 1942), Judge Chesnut reviewed the applicable Maryland law in regard to dower and summarized the Maryland law as follows:

"No Maryland partition or condemnation case has been found where an award for inchoate dower has actually been made. In two early Maryland partition cases, . . .it was intimated that such an allowance might possibly be made in a proper case; but the most significant Maryland decision is *Reiff v. Horst,* 55 Md. 42, 47, 49. In that case the wife by agreement had released her inchoate dower in certain lands for a stipulated consideration. The court enforced the

agreement but, in discussing the general question of compensation for inchoate dower, it was said:

" 'The interest of the wife in her husband's real estate is inchoate only during his life, it requires the husband's death to occur before it becomes a vested right. As this Court defines it in *Buchanan v. Deshon,* 1 Har. & G. 280, "she has no vested right, it is altogether contingent, depending upon her surviving her husband." In *Hawley v. Bradford,* 9 Paige, [200], 201 [37 Am. Dec. 390], the Chancellor says: "Strictly speaking, the wife has no interest or estate in the lands of her husband *during his life,* which is capable of being mortgaged or pledged for the payment of his debt. Her joining in a mortgage therefore merely operates by way of release or ·extinguishment of her future dower as against the mortgagor, if she survives her husband, but without impairing her contingent right of dower in the equity of redemption. If the mortgage be foreclosed in the life-time of the husband, she has no claim on the surplus proceeds of sale; but if her husband be dead when foreclosure takes place her dower right in the equity of redemption having then become consummate, she would be endowed of the surplus proceeds." 1 *Scribner on Dower,* 478; [*Titus v. Neilsen*], 5 Johns. Ch. 452. In the last cited case, Chancellor Kent says, it is very clear this is the law. It results from these authorities that the wife's inchoate right is not such a right as may be bargained and sold. Her deed does not pass any title. It operates only by way of estoppel or release. And any words of release would be as effectual as words of grant. She cannot convey it to a stranger. It is only released to the owner of the fee. * * * *Regarding her right, as the law does, during the husband's life,*

*as having no present value, as it is not the sub-
ject of sale, but only of release to the owner of
the fee, we have no scale or standard for ascer-
taining its present worth * * *.'*

"I have not been able to find that this view of
the nature of inchoate dower as expressed by
the Maryland Court of Appeals in *Reiff v. Horst,*
has been subsequently modified in any way. It
was cited with approval in the recent case of
*Roth v. Roth,* 144 Md. 553, 555, 125 A. 400. In
*Hopkins v. Magruder,* D. C. Md., 34 F.Supp.
381, Judge Coleman, in applying the federal
gift tax statute * * * held that where a hus-
band made a deed of gift to his wife of certain
real estate, no deduction from the whole value
thereof could be made on account of her in-
choate dower for the computation of the tax.
After stating the nature of inchoate dower in
Maryland (34 F.Supp. page 383) he said, at
page 384 of 34 F.Supp.: 'In short, we are being
asked to place a value upon something, the pres-
ent worth of which the Court of Appeals of
Maryland has said can be ascertained by no
scale or standard, *Reiff v. Horst,* 55 Md. 42.' "

* * *

"It will thus be noted that the view of the
Maryland Court of Appeals as to inchoate dower
is that it has no present value and there is no
scale or standard for ascertaining its present
worth."

(Emphasis in the opinion of the District Court.)

See also the informative review of Maryland statutes
and cases by Chief Judge Brune, speaking for the Court,
in *Kreamer v. Hitchcock,* 207 Md. 454, 115 A. 2d 255
(1955) ; *Alexander's British Statutes,* p. 306 et seq., and
Venable, *Law of Real Property and Leasehold Estates in
Maryland,* p. 21, et seq.

In *Key v. Key,* 134 Md. 418, 421-423, 106 A. 744

(1919), our predecessors held that the Act of 1916, Ch. 325 which enlarged the share in real property of a surviving spouse, electing to take against a will, could be validly applied retroactively. Judge Briscoe, for the Court, stated:

"The second objection that the Act is invalid because it disturbs and impairs existing and vested property rights is manifestly not tenable.

"The language of the third section of the Act is clear and definite that the surviving husband or widow shall take as heir a certain share in lands, tenements or hereditaments, within this State belonging to the deceased spouse at the time of his or her death, though such deceased spouse die testate.

"The statute it will be seen operates only upon property owned and belonging to a person at the time of his or her death, and does not in any way change or divest rights or estates in property already descended or vested, nor does it affect the enjoyment and ownership of property by the owner during his life.

"Similar laws of this character have been held valid and constitutional, and approved by the Supreme Court of the United States in a number of cases and by the Appellate courts of the various states.

"In *Noel v. Ewing*, 9 Indiana 38, the Supreme Court of Indiana in applying a statute of that State which provided that if a husband die, testate or intestate leaving a widow, one-third of his real estate shall descend to her in fee simple, held that husbands as a class were embraced in the language used, and that it included all those who sustained this relation at the date of the statute or might sustain that relation in the future. The Court said: 'Upon the dissolution of marriage by death the law applies. If persons

married before the Act were intended to be excepted the law would have been so written. It establishes the death of one of the parties as the future event on which it is to operate. It simply determines the legal effect of death as a future event on the rights of the surviving wife.'

"In *U. S. v. Fox*, 94 U. S. 315, the Court there said: 'The power of the state to regulate the tenure of real property within her limits, and the mode of its acquisition and transfer, and the rules of descent, and the extent to which a testamentary disposition of it may be exercised by its owners is undoubted. It is an established principle of law, everywhere recognized, arising from the necessity of the case, that the disposition of immovable property, whether by deed, descent or any other mode, is exclusively subject to the government within whose jurisdiction the property is situate.'

"It is very apparent in the present case that there are no vested rights involved and the authorities in support of the validity of such legislation are too numerous and well settled to permit it to be disturbed at the present date. The cases and citations from the various text-writers upon the subject will be found cited and collected in the appellant's brief in the case of *Safe Deposit Co. v. Gittings*, 103 Md. 494, and will be found to fully sustain the conclusion we have reached in this case. *Sturgis v. Ewing*, 18 Ill. 176; *Brettun v. Fox*, 100 Mass. 234 and *Randall v. Kreiger*, 23 Wall. 148."

It is thus seen that under the Maryland law the inchoate right of dower was not a vested right. It was only upon the death of the spouse that dower became vested. The spouse had no interest or estate in the other spouse's land prior to the death of that spouse which was capable of being mortgaged, pledged or sold.

The Supreme Court of the United States has indicated

that inchoate rights of dower are within the control of the State Legislature and such rights are not protected from State action by the Federal Constitution.

In *Randall v. Kreiger*, 23 Wall. (90 U. S.) 137, 148 (1874), *supra,*—cited with approval in *Key v. Key, supra* —the Supreme Court sustained the retroactive application of a State statute permitting a wife to convey her inchoate dower interest by means of a power of attorney. Mr. Justice Swayne, for the Supreme Court, stated:

> "During the life of the husband, the right is a mere expectancy or possibility. In that condition of things, the law making power may deal with it as may be deemed proper. It is not a natural right. It is wholly given by law, and the power that gave it may increase, diminish or otherwise alter it, or wholly take it away. It is upon the same footing with the expectancy of heirs, apparent or presumptive, before the death of the ancestor. Until that event occurs the law of descent and distribution may be moulded according to the will of the Legislature.
>
> "Laws upon those subjects in such cases take effect at once, in all respects as if they had preceded the birth of such persons then living. Upon the death of the husband and the ancestor the rights of the widow and the heirs become fixed and vested. Thereafter their titles respectively rest upon the same foundation, and are protected by the same sanctions as other rights of property."

The Supreme Court cited *Randall* with approval and followed it in *Ferry v. Spokane P. & S. Ry. Co.*, 258 U. S. 314, 42 S. Ct. 358, 66 L. Ed. 635 (1922) in which that Court unanimously sustained a statute of Oregon which divested a non-resident wife of dower rights in property disposed of by her husband prior to his death. In sustaining this statute, Mr. Justice McKenna, for the Supreme Court, stated:

"Dower is not a privilege or immunity of citizenship, either state or federal, within the meaning of the provisions relied on. At most it is a right which, while it exists, is attached to the marital contract or relation; and it always has been deemed subject to regulation by each State as respects property within its limits. * * * Neither § 2 of Article IV nor the Fourteenth Amendment takes from the several States the power to regulate this subject; nor does either make it a privilege or immunity of citizenship. * * *

"The further contention, based on the Fourteenth Amendment necessarily is, as counsel urge, that dower is 'fundamental and substantial,'—'a property right, being, while inchoate, a chose in action, of which no citizen of the United States, wherever he (she) may be resident, can be deprived without "due process of law," and as to which every person is entitled to the "equal protection of the laws," as provided in the Fourteenth Amendment of the Constitution.'

"The Court of Appeals considered this contention, and it is difficult to add anything to its opinion. It pointed out that the Oregon statute was taken from the laws of Michigan adopted in 1846 and sustained. The example of Michigan was followed in Wisconsin, Kansas and Nebraska and sustained by the courts of those States. * * *

"And Blackstone speaks of dower as having become 'a great clog to alienation,' and 'otherwise inconvenient to families.' * * *

"The cases recognize that the limitation of the dower right is to remove an impediment to the transfer of real estate, and to assure titles against absent and probably unknown wives. And such is the purpose of the Oregon statute,

and the means of executing the purpose appropriate, and a proper exercise of classification. It satisfies, therefore, the constitutional requirement of the equal protection of the laws; and we proceed to the inquiry whether the statute is otherwise valid. * * *

"The granting of dower, therefore, is a matter of statutory regulation. It was so decided by the United States Circuit Court of Oregon in 1887 (*Thorburn v. Doscher, supra*), Judge Deady expressing it as follows: 'It rests with the Legislature to say what interest, if any, married persons shall have in the property of each other, as an incident of the relation between them. It may give or withhold dower altogether. Or it may for the security of titles, and the protection of innocent purchasers, provide that a non-resident woman whose very existence is probably unknown within the state, and is practically disavowed by the husband, shall not be entitled to dower of land which he had disposed of without her concurrence or consent, and ostensibly as a single man.' The law thus declared has been the law of Oregon for 65 years.

"There is a distinction between dower created by the parties and that given by law, and the latter 'is believed to be the only kind which ever obtained in this country.' *Randall v. Kreiger*, 23 Wall. 137, 148. Expressing the power of the legislature over it, the court said: 'During the life of the husband the right is a mere expectancy or possibility. In that condition of things, the lawmaking power may deal with it as may be deemed proper. It is not a natural right. It is wholly given by law, and the power that gave it may increase, diminish, or otherwise alter it, or wholly take it away. It is upon the same footing with the expectancy of heirs, apparent or

presumptive, before the death of the ancestor. Until that event occurs, the law of descent and distribution may be moulded according to the will of the legislature.' * * *

"From these cases it results, as said by the Circuit Court of Appeals, that 'the legislature having this power to give or withhold dower, it follows that it has the power to declare the manner in which the dower right may be barred, or the grounds upon which it may be forfeited, and, if so, it has the right to provide that it may be barred by the wife's nonresidence in the State.' "
(258 U. S. at 318-21, 42 S. Ct. at 358-9, 66 L. Ed. at 638-9.)

*Randall* was again cited with approval and followed by the Supreme Court in *Irving Trust Co. v. Day,* 314 U. S. 556, 62 S. Ct. 398, 86 L. Ed. 452 (1942) in sustaining the constitutionality of the Laws of New York of 1929, Ch. 229 giving a widow the right to elect a statutory share. In speaking for a unanimous Court, Mr. Justice Jackson stated:

"Rights of succession to the property of a deceased, whether by will or by intestacy, are of statutory creation, and the dead hand rules succession only by sufferance. Nothing in the Federal Constitution forbids the legislature or a state to limit, condition, or even abolish the power of testamentary disposition over property within its jurisdiction. * * * Expectations or hopes of succession, whether testate or intestate, to the property of a living person, do not vest until the death of that person. Appellants cannot successfully attack the constitutionality of the new legislation which went into effect before McGlone's death, and became operative only as the result of his own voluntary act."
(314 U. S. at 562, 62 S. Ct. at 401, 86 L. Ed. at 457.)

See also *Simons v. Miami Beach First National Bank*, 381 U. S. 81, 85 S. Ct. 1315, 14 L.Ed.2d 232 (1965).

The substantial weight of authority in other states sustains the validity of legislative abolition of inchoate rights of dower. The earlier cases are collected in 20 A.L.R. 1330 (1922) in an annotation entitled: "Constitutionality of Statutes in Relation to Dower."

Among the more recent cases are: *Opinion of the Justices*, 337 Mass. 786, 151 N.E.2d 475 (1958); *Goodman v. Gerstle*, 158 Ohio St. 353, 109 N.E.2d 489 (1952); *Fletcher v. Felker*, 97 F. Supp. 755 (W.D. Ark. 1951); *Classen v. Heath*, 389 Ill. 183, 58 N.E.2d 889 (1945); *Ruby v. Ruby*, 112 W. Va. 62, 163 S. E. 717 (1932); *Gerhardt v. Sullivan*, 107 N. J. Eq. 374, 152 A. 663 (1930); *O'Kelly v. Williams*, 84 N. C. 281 (1881).[1]

In the *Opinion of the Justices, supra,* the Supreme Judicial Court of Massachusetts, in indicating that the abolition by statute of dower and curtesy in regard to lands disposed of by a decedent prior to the decedent's death was valid, summarized the position of the jurisdictions constituting the substantive weight of authority in the United States. It stated:

> "That the bill would violate no provision of the Federal Constitution is settled by decisions of the Supreme Court of the United States [citing *Randall v. Kreiger, supra,* and *Ferry v. Spokane Ry., supra*] * * *.
>
> "Dower and curtesy are of much less importance than formerly. This diminution in value is due to the great increase in the amount of personal property and in the superior alternative rights in the estate of a deceased husband or wife accorded by statute to a surviving spouse. * * *
>
> "* * * claims of dower or curtesy in this Com-

---

1. It will be noted that North Carolina in 1959 enacted a statute which provides that, "The estates of curtesy and dower are hereby abolished.", Chapter 29-4, North Carolina General Statutes. The constitutionality of the statute has apparently never been tested.

monwealth have almost ceased to be made; and, in fact, a claim of neither is advisable except under two special circumstances: '(1) if the deceased owned real estate, but died insolvent or so nearly so that the bulk of the real estate must be sold to pay the debts and expenses; and (2) if the deceased during his or her lifetime conveyed a considerable amount of real estate without procuring a release of curtesy or dower in the deed.' * * * It may be noted that statutory changes in dower as a common law incident of marriage have been made in this Commonwealth without making an exception of existing marriage * * *.

"We are not surprised to learn that dower and curtesy either no longer exist or are of little practical importance in more than half the States. * * *

"* * * the decided cases uphold the validity of the proposed changes. * * *

"We think that inchoate curtesy and inchoate dower, as contingencies before the death of the predeceasing spouse, are subject to action by the Legislature, which may make an evaluation in the public interest, and determine that any slight advantage in their retention in a relatively few cases is outweighed by the far greater benefit to the general good accruing from their restriction."

(337 Mass. at 789-95, 151 N.E.2d at 477-80.)

See also 1 *American Law of Property*, (1952) § 5.31, n. 21, § 5.32, n. 5; 2 Cooley, *Constitutional Limitations*, (8th ed. 1927) n. 1; Note entitled "Dower—Statute Allowing Extinction of Inchoate Dower Interest," 52 Harv.L.Rev. 1188 (1939); "Inchoate Dower Today," 96 U.Pa.L.Rev. 677, 689-690 (1948); 3 Vernier, *American Family Laws,* 354 et seq. (1935). But see, *contra,* 2 *Scribner On Dower* (2d Ed. 1883), pp. 18-21. Cf. 2 Tiffany, *Law of Real Property* (3rd Ed. 1939), § 533, p. 422.

18

The Appellant relies upon the decision of our predecessors in *Harris v. Whiteley,* 98 Md. 430, 56 A. 823 (1904) but, in our opinion, that case is clearly distinguishable from the present case. In *Harris* the question presented was in regard to the alleged retroactive effect of the Act of 1898, Ch. 457 which, in relevant part, provided:

> " 'Every husband shall acquire by virtue of his marriage an estate for his life in one-third of the lands held or owned by his wife at any time during the marriage, whether by legal or equitable title, or whether held by her at the time of her death or not, but such estate shall not operate to the prejudice of any claim for the purchase-money of such lands, or other lien on the same; nor shall any conveyance of such lands by the wife alone bar such estate of the husband therein.' "

The wife had acquired a vested fee simple estate in certain lands from her deceased father prior to the passage of the Act of 1898, but creditors of the husband in 1903 filed a petition in a pending equity proceeding to subject the interest of the husband allegedly acquired in the wife's property by the Act of 1898 to the payment of his debts. The Chancellor dismissed the petition and his order was affirmed on appeal. It was held that (1) the Act of 1898 was not intended to operate retroactively and (2), in any event, it could not adversely affect the *vested rights of the wife* acquired prior to the passage of the Act of 1898. Judge Schmucker, for the Court, anticipated the very question presented in the present case when he stated:

> "Assuming that the interest acquired by Mr. Whiteley in his wife's real estate at the time of his marriage in 1881, which under the Code of 1860 was a mere expectancy and not a vested estate, was subject so far *as he was concerned* to legislative control and might have been modified or diminished by subsequent legislation, it

does not at all follow that the Legislature had the power to increase or enlarge that interest if by so doing the wife's vested interest in her own estate would be correspondingly diminished. Mrs. Whiteley acquired her estate in her property by devise and not as an incident of her marital *status* or relation and she is entitled to the full benefit and protection of the proposition so strongly supported by the cases last cited. This Court has already held that even the husband's estate by the curtesy in his wife's realty, when it had become fixed by the birth of a child alive, was not impaired or affected by subsequent legislation regulating marital property rights although his curtesy was founded on and grew out of his marital relation. *Porter v. Bowers*, 55 Md. 215; *Rice v. Hoffman*, 35 Md. 344; *Hoffman v. Rice*, 38 Md. 285. The principle there asserted applies with equal force to the estate of the wife in her realty which had become vested prior to the Act of 1898."
(Emphasis by the Court, 98 Md. at 442-443, 56 A. at 824.)

It was because the *wife's* rights were *vested*, that the Court indicated the legislature could not impair those rights retroactively by *expanding* the husband's interest in the land. In the instant case, as we have observed, the *inchoate* right of dower is not vested, a vested right not arising until the death of the spouse who owns the land.

Judge Stockbridge, for the Court, observed the same distinction between inchoate and vested rights in considering the Act of 1910, Ch. 90 in *State v. American Bonding Co. of Baltimore*, 128 Md. 268, 273, 97 A. 529, 531 (1916) when he stated:

"In 26 *Am. & Eng. Ency.* 747, it is said, that the repeal of a statute in the absence of a saving clause necessarily divests and destroys all inchoate interests which have arisen under it,

while it leaves unimpaired those which have become vested. This is a succinct statement of the general rule which will be found applied in all of the cases."

It is also clear in the case at bar that the statute involved *was intended* by the General Assembly to have retroactive effect. The statute was prepared by the Governor's Commission to Study and Revise the Testamentary Laws of Maryland, of which the Honorable William L. Henderson, formerly a Chief Judge of this Court, was Chairman. Fortunately, the comment of the Commission in regard to the Act of 1969, Ch. 3, § 1, now Code (1969 Replacement Vol.), Art. 93, § 3-202, abolishing the estates of dower and curtesy, is published immediately after the statutory provision and clearly indicates that the statutory provision was to have retroactive effect. The comment is:

"This provision has the effect of eliminating from the testamentary picture the traditional estates of dower and curtesy which were defined and regulated in former §§ 328, 329, 334, 335, and 339 through 343, §§ 33-37 and 138 (b) of Article 16, §§ 6, 7, 12 and 13 of Article 45, and § 4 of Article 46. These estates no longer served any significantly useful purpose and in recent years were rarely availed of by a surviving spouse. The modern provisions of statutory shares of outright interests in the decedent's property seem to have replaced these ancient concepts. In addition, the intended protection of the estate of dower has often been nullified as a practical matter through the creation of a life estate with unrestricted power of disposition, the creation of a 'one cent' ground rent, or the acquisition of real estate by a wholly owned corporation.

"Since this abolition is effective as to estates of persons dying on or after January 1, 1970

(see Section 12-102 (a) ), one practical effect will be that those who must handle real property conveyances on or after that date need not routinely obtain the signature of the grantor's spouse on an instrument conveying only the grantor's interest in real property.

"Amendments to § 18 of Article 27 and § 15A of Article 75 were also made in order to delete the references to dower therein.

"As a result of the abolition of dower, the following hoary British statutes, printed in Alexander, A Collection of The British Statutes in Force in Maryland (1870) will no longer be applicable in Maryland: Magna Charta, 9 Henry III Ch. 7 (providing for the assignment of dower to a widow within 40 days after the death of her husband and establishing the inchoate right of dower as to all lands of which the husband had been seized at any time during coverture) ; 20 Henry III Ch. 1 (providing for damages collectible by a widow against heirs who have refused or failed to make an assignment of dower) ; and 13 Edward I Ch. 34 (extinguishing right of dower in the event of adultery). See also Steiner, Adoption of English Law in Maryland, 8 Yale L. J. 353 (1899) ; Sioussat, The English Statutes in Maryland, XXI Johns Hopkins Studies in Historical and Political Science 465 (1903) ."

The appellant also relies upon the decisions of *our predecessors* in *Hammond v. Piper,* 185 Md. 314, 44 A. 2d 756 (1945) and *Marbury v. Bouse,* 187 Md. 106, 48 A. 2d 582 (1946) involving a contingent remainder and a reversion respectively. In both cases it was held that the respective interests were not affected by the Act of 1916, Ch. 325, Sec. 1 which abolished common law rules of seisin or purchase as the basis for the descent of real property and provided that real property should descend in the same manner and proportion as personal property

is distributed in intestacy. The appellant urges that inasmuch as the interest involved in those cases "was the expectancy of an heir," it is incongruous for this Court to protect that interest against the retroactive operation of the Act of 1916, Ch. 325 and not to protect an inchoate right of dower against the retroactive effect of the Act of 1969, Ch. 3. One fundamental distinction between the Act of 1916, Ch. 325, on the one hand, and the Act of 1969, Ch. 3, on the other, is that the former Act was not intended to be retroactive—as this Court determined in *Kernan v. Carter*, 132 Md. 577, 104 A. 530 (1918) — whereas the Act of 1969, Ch. 3 is clearly intended to be retroactive. In short, no *constitutional issues* were involved in either *Hammond* or in *Marbury,* and, of course, were not passed on by the Court in those cases. Moreover, there are differences between rights of entry and possibilities of reverter and the inchoate right of dower in so far as vesting is concerned. For example, rights of entry and possibilities of reverter are considered to be present, vested property interests for the purposes of the rule against perpetuities. See Simes, *Future Interests,* Sections 506-507 and Reno, *Alienability and Transmissibility of Future Interests in Maryland,* 2 Md.L.Rev. 89, 97 (1938). Then, too, the Act of 1908, Ch. 84 (see Art. 93, § 1-301) provided that rights of entry and possibilities of reverter are subject to disposition by will.[2] There are other differences which need not be explored in this opinion. We believe that there is no inconsistency between the result we have reached in the present case and that reached by our predecessors in the *Hammond* and *Marbury* cases.

We conclude, therefore, that there are no provisions of either the Constitution of the United States or of the Constitution of Maryland which prevent the General As-

---

2. It may be observed that the policy of the common law against the alienability of rights of entry and possibilities of reverter rested upon the policy against champerty and maintenance—see Evans v. Safe Deposit and Trust Co., 190 Md. 332, 345-56, 58 A. 2d 649 (1948) and not upon the insubstantiality of the interests themselves.

sembly from retroactively abolishing inchoate rights of dower. We have seen that both early forms of dower based upon contract passed from the law many years ago and were never part of the common law in Maryland or indeed in this Country. There can be no contention — and there is none—that there is any impairment by the State of the obligation of a contract as prohibited by Article I, Section 10 of the Federal Constitution. Nor is there any taking of property by the State without due process of law as prohibited by the Fourteenth Amendment to the Federal Constitution and which is also prohibited in this State by Art. 23 of the Declaration of Rights of the Maryland Constitution. The inchoate right of dower is not a *vested* right entitled to receive Constitutional protection. The action by the General Assembly in abolishing the estate of dower is not arbitrary, unreasonable or capricious, but, on the contrary, is based upon well considered reasons of public policy, many of which are outlined in the "Comment" to Art. 93, § 3-202 already quoted. In addition to these factors, the modern uncertainty in many instances in regard to the validity of prior marriages or even of the status of present marriages leads to complications and difficulties in regard to the title of land and its alienability. These problems were largely unknown to the common law. The General Assembly could reasonably conclude, as have the legislatures of many of our sister States as well as Parliament, that the public interest required that the inchoate rights of dower and of curtesy be abolished retroactively.

## (2)

The final argument of the appellant is that, as a matter of proper construction, the language of the statute in question is not sufficiently broad to abolish inchoate rights of dower which are not usually referred to as "estates." The appellant correctly points out that at common law there was no "estate" of dower until the husband had died and dower had been assigned to the wife. See *Rowland v. Prather,* 53 Md. 232, 238 (1880) and 2 Tiffany,

*Real Property* (3rd ed.), § 533. The General Assembly, however, was using the word "estate" in its general sense to include the inchoate rights of dower or curtesy. In *Black's Law Dictionary* (4th Ed. 1951), p. 643 "estate" is defined as follows:

> "* * * 'estate' is constantly used in conveyances in connection with the words 'right,' 'title' and 'interest' and is, in a great degree, synonymous with all of them."

We note that in the Act of 1898, Ch. 457, § 7, Code (1965 Repl. Vol.), Art. 45, § 7, which created the husband's "dower," the draftsman used the word "estate" in its creation, without mentioning any "inchoate" rights, but our predecessors indicated in *Collins v. Collins,* 98 Md. 473, 480, 57 A. 597, 600 (1904) that this statute, together with the Act of 1898, Ch. 331 (in regard to the rights of a surviving husband in the estate of his wife) "have practically made the marital rights of husband and wife the same so far as respects their property." Thus, the husband had his inchoate right of dower in his wife's real estate prior to her death by virtue of the Act of 1898, Ch. 457 as did the wife at common law in his real property prior to his death, notwithstanding the somewhat inartistic wording of the Act of 1898.

In *Pressman v. Barnes,* 209 Md. 544, 121 A. 2d 816 (1956) Judge Delaplaine, for the Court, stated:

> "The *cardinal rule* of statutory construction is that statutes should always be construed to effectuate the intention of the Legislature. * * * the proper course of construction in every case is to adopt that meaning of the words which best harmonizes with the context and promotes the policy and objects of the Legislature." (Emphasis supplied.) (209 Md. at 558-9, 121 A. 2d at 823.)

As we have already observed, the "comment" of the draftsman of the statute clearly indicates that the word

"estate" was used in its general and not in its narrow or technical sense and that it was intended that inchoate rights of dower and curtesy be abolished.

More precise language could well have been used in the statute and there would seem to be little purpose in including "curtesy" in the statute, as "curtesy" was abolished by the Act of 1898, Ch. 457, § 7, see Code (1965 Repl. Vol.) Art. 45, § 7, and a husband's "dower" enacted in its place. The word "curtesy" is surplusage in the Act of 1969, Ch. 3, but presents no difficulty inasmuch as it merely reaffirms what had been done by the Act of 1898, Ch. 457, § 7. As we observed in Note 1, *supra*, the identical language of the Maryland statute appears in the North Carolina statute. The same language has been adopted by the National Conference of Commissioners on Uniform State Laws for the Uniform Probate Code and approved by the American Bar Association, apparently with the intent to accomplish the abolition of inchoate rights of dower retroactively. In our opinion, it was clearly the intent of the General Assembly to accomplish this in Maryland by the statute in question. The language used, as properly construed, accomplishes this intention.

> *Decree affirmed, the appellant*
> *to pay the costs.*